NARISSA BELLE CHAPMAN, RESPONDENT, v. THE STATE SOCIAL SECURITY COMMISSION OF MISSOURI, APPELLANT.—147 S. W. (2d) 157.

Kansas City Court of Appeals. January 27, 1941.

*Roy McKittrick,* Attorney-General, and *Aubrey R. Hammett, Jr.,* Assistant Attorney-General, for appellant.

*Ernst & Williams* for respondent.

MIDGLEY, S. J.—Respondent Narissa Belle Chapman made application for old age assistance, which was denied by the State Social Security Commission. The circuit court on appeal remanded the proceedings to the Commission for redetermination. This is an appeal from the circuit court's judgment.

The Commission denied respondent's application for two reasons: First, it found that she had assigned or transferred property for the purpose of rendering herself eligible for benefits; second, it found that she had income, resources, support and maintenance to provide a reasonable subsistence compatible with decency and health, and was not in need. A previous application for benefits had been made and denied in 1938, and no appeal was taken. The present application was filed in May, 1939, rejected in August, 1939, application for hearing by the Commission was granted, and evidence heard by a referee October 24, 1939, and the Commission's decision on such record was rendered January 3, 1940. The entire present proceeding, therefore, is under the 1939 statutes, Sections 12967b-11, 12967b-12, and 12967b-16, Missouri Statutes Annotated, which amended the corresponding Sections 12967a-11, 12967a-12, and 12967a-16, in the 1937 State Social Security Code. We shall, for brevity, refer to these statutes in this opinion as the old and the new Sections 11, 12, and 16.

*As to our jurisdiction:*

Discussion of the facts should be prefaced by consideration of the extent of our jurisdiction under these statutes. The right to old age assistance being purely statutory, and non-existent at common law, the claim of any person under the statutes is subject to the provisions and limitations which the Legislature creating the right has placed thereon, whether in matters of substance, procedure, or remedy. The courts must interpret and apply such statutes in the manner they perceive the Legislature intended.

The old section 16 provides that on appeal "such appeal shall be tried in the circuit court *de novo* on the sole question of whether the applicant is entitled to benefits and not as to the amount thereof." Obviously, under such statute, the circuit court was the ultimate judge of the facts which determined right to benefits.

The new section 16 (Laws 1939, p. 736), provides that the evidence at the hearing before the Commission shall be preserved and become part of the case record, and when benefits are denied and appeal taken, this record is certified to the circuit court. "Such appeal shall be tried in the circuit court upon the record of the proceedings had before and certified by the State Commission . . ." There is no trial *de novo,* as under the old statute. The court's sole jurisdiction under the new law is to "determine whether or not a *fair hearing* has been granted the individual" and "if the court shall decide for any reason that a *fair hearing and determination of the applicant's eligibility and rights under this act was not granted the individual by the State Commission,* or that its decision was *arbitrary and unreasonable,* the court shall, in such event, remand the proceedings for *redetermination of the issues by the State Commission.*" Under the new section, the Commission, not the courts, is the forum where the facts are ultimately to be decided. The sole function of the courts is to see that such decision is made after a fair hearing and is not arbitrary and unreasonable. We cannot conclude that the Commission's hearing or decision in any case is "unfair," or "arbitrary," or "unreasonable," simply because, with conflicting evidence or with possible conflicting inferences from the evidence, each of which might be reasonable, we would, if empowered ultimately to decide the fact, have reached a different conclusion than was reached by the Commission. Remand for "redetermination" would be proper only if we conclude that a fair and reasonable opportunity to present her evidence was not given the applicant, or if all of the substantial evidence in the case reasonably tended to support only the conclusion that claimant was entitled to old age assistance under the statutory provisions. This conclusion is in accord with the decisions of the Springfield Court of Appeals. [Johns v. State Social Security Commission, 143 S. W. (2d) 161; Clay v. State Social Security Commission, 143 S. W. (2d) 165; Clay v. State Social Security Commission, 143 S. W. (2d) 167.]

Learned and able counsel for the applicant urge that the decision of the Commission in this case should not be given the weight and effect of a jury verdict in common-law actions, since the Commission's ruling was based on the written record of a hearing before a referee. It is argued that such being the case, the Commission had no advantage over this court in considering the case, such as a trial court in an ordinary suit usually has in its opportunity to view the witnesses, observe their demeanor and appearance while testifying, etc. The fact remains that the Commission *is empowered* by statute to make the decision upon conflicting facts and inferences, whereas the courts are *not* so empowered by the new Section 16.

*As to burden of proof before the Commission:*

Under the statutes, application for old age assistance is filed in

the county office (Sec. 12967b-14), investigation of the circumstances of the applicant is made by that office, and decision in the first instance is made by the State Administrator, or someone designated by him. If such decision is favorable, no further proceeding by the applicant is required (Sec. 12967b-15). Consequently in most cases where the applicant is clearly entitled to benefits, the applicant is enrolled without hearing, and the Commission is not required to hold a hearing on the application. If the application is denied by the administrator or his appointee, appeal to the Commission results in a hearing. The statute (Sec. 12967b-16) requires the Commission to give "notice of, and opportunity for, a fair and speedy hearing." The applicant is given the right to appear in person and by attorney, and "to introduce into the record at said hearing any and all evidence, by witnesses or otherwise, pertinent to such applicant's eligibility." It seems clear under the procedure thus provided that the burden of proof of eligibility on the hearing before the Commission is on the applicant. Her claim was investigated and rejected prior to the hearing, and she is attempting by appeal to the Commission and the courts to reverse that decision of the administrator or his appointee.

*As to the statutory requirements for eligibility:*

Section 1 of the Federal Social Security Act authorizes appropriations to enable each state "to furnish financial assistance as far as practicable under the conditions in such state, to *aged needy individuals,*" such sums to be used to make payments to states having properly approved state plans for old-age assistance. In Moore v. State Social Security Commission (Mo. App.), 122 S. W. (2d) 391, this court commented that in its opinion a person could qualify as an "aged needy individual" within the meaning of the Federal statutes in spite of gratuitous support being received from a daughter. This court ruled, however, that rights in Missouri were determined by the State law, not the Federal statute, and that under old section 12 such gratuitous assistance was not "income or other resources," or "means of support," and did not disqualify the applicant. The comments of Mr. Witte, Executive Director of the Committee on Economic Security before the senate committee, quoted in that opinion, demonstrate that at least he did not feel that the proposed Federal legislation, by the words "aged needy individuals," was intended to include those who are supported by their children. This court commented in the Moore case (122 S. W. (2d) 394):

"Whether it was wise or unwise not to withhold benefits from one who has a child willing and able to support him is a matter for the attention of the Legislature and not a question for the courts."

Previously, in 1938, the Springfield Court of Appeals had ruled (Price v. State Social Security Commission, 121 S. W. (2d) 298), that gratuitous support to the applicant's wife from a daughter-in-law was

not "income or other resources" or "means of support" under the old Section 12, and did not render the applicant ineligible for benefits.

Whether the amendments made in 1939 to the eligibility requirements were occasioned by disapproval of the Missouri plan, so construed, by the Federal Social Security Board, or (as might be indicated by the emergency clauses) by reason of disagreement by our Legislature with the interpretation made in the above cases of the eligibility requirements in the 1937 statute, or by a definite change of legislative policy, is not important. It *is* important that the eligibility requirements *were in fact materially altered.*

Paragraph (2) of the old section 12 specified that assistance should be granted to any person who "is incapacitated from earning a livelihood and has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health," and is therefore without adequate means of support. In the new paragraph 12, after the words, "income or other resources," is added, *"as described in section 11."* The new section 11 contains subparagraph (6) (not found in the old section 11) which provides that no benefits shall be paid to any person who "has earning capacity, income, or resources, *whether such income or resources is received from some other person or persons, gifts or otherwise,* sufficient to meet his needs for a reasonable subsistence compatible with decency and health." It seems clear that under the 1939 law the Legislature has made its own definition of "income" and "resources," contrary to the definition of those terms in the Moore and Price cases, expressly including gifts from others; and has expressly excluded as ineligible for benefits one receiving income or resources by way of gifts from children sufficient to meet his needs for a reasonable subsistence compatible with decency and health. [Buettner v. State Social Security Commission (Mo. App.), 144 S. W. (2d) 864.]

It follows, then, that our inquiry is limited to the determination of (1) whether, on the record, the commission gave the applicant a fair hearing; (2) whether its decision, on the record, was unfair, arbitrary or unreasonable, keeping in mind that the Commission could find, if the record justifies it, that the applicant was not eligible if she was receiving gifts or support from her daughter and son-in-law sufficient to meet her reasonable needs, and (3) whether, on the record, the decision that applicant transferred her property to render herself eligible for benefits was unfair, arbitrary or unreasonable.

*As to the facts:*

The respondent alone testified in her own behalf. Her daughter and son-in-law, with whom she lives on a farm near McFall in Gentry County, where subpoenaed by the Commission. No other witnesses appeared at the hearing.

Respondent, age seventy-one in August, 1939, has been a widow since 1923. She has an unmarried son in Wyoming who contributes

nothing to her support. Since her husband's death she has made her home with her daughter and son-in-law, Mr. and Mrs. Abe Burton, Jr., on a farm near McFall in Gentry county. She testified that she had no real estate, bonds, or furniture, and only $10 in cash, was unemployed and physically unable to work because of high blood pressure, kidney and liver trouble. She, however, is up and about most of the time, does light housework such as cooking, washing dishes, cleaning the separator, and "light work outside." A brother usually sends five or ten dollars at Christmas time. The house has five rooms; only the three live there. She stays not by any arrangement but "as a member of the family," and is "one of the family" as to food, board, lodging, and clothing. Now and then she is given a dress by her daughter and by a granddaughter. She has been looked after and cared for by her daughter and son-in-law since living with them, is "comfortable," and has "enough to eat and enough clothes and a good place to stay." She cannot help as much as two years ago, but the living arrangements are the same and she doesn't have more than she is able to do.

Since the spring of 1939 respondent has been under a doctor's care, seeing him twice a month and taking medicine provided by him, the monthly expense being five or six dollars. All bills were paid at the time of the hearing. The record is clear that respondent herself paid these bills, but there is confusion in the record as to whether the money came from the insurance proceeds hereinafter referred to (both alleged and denied by her), or from sale of some "cooperative shares" she owned which netted $15, or from savings from prior wages. The daughter said respondent "has some little money of her own." There is no medical evidence that the treatment respondent is receiving is inadequate. Her daughter testified her mother should see the doctor more frequently. Respondent is in need of glasses and new teeth, but has had no examination made of her eyes, and the estimated cost of such items is not shown.

Respondent's original application under the 1937 law was rejected because she then had a $1000 policy of insurance and a $285 note of one Havens, a neighbor. The policy had been transferred through receivership once or twice. Interest had not been paid on the note since about 1933, and apparently repeated efforts to collect without suit were unavailing. There is testimony Havens was execution proof. Since no appeal was taken, we are not concerned with the soundness of the Commission's ruling in that instance. Following that rejection, respondent, apparently after some difficulty, cashed in her policy, receiving a net of $446.00, and turned this cash and the Havens note over to her son-in-law. Further efforts by him to collect the note were futile, and he traded this note to a dealer for a $100 credit on a $299 refrigerator. Respondent's reason for giving the note to her son-in-law was that she would rather he have it than someone else if

he could collect it. There is some conflict in the evidence as to the reason for transferring the $446 cash. Respondent said that they were to take care of her burial expense out of the money. Mr. Burton said it was for that and past support. All the witnesses testified the cash was applied toward the $1600 down payment on the $3600 purchase price of the farm. (They had previously occupied the farm as renters.) Respondent testified she received the money from the company "this summer" (1939), and that the farm was bought in the spring of 1939. Burton says the deal for the farm was closed March 1, 1939.

Burton's only debts were the farm mortgage (interest and taxes are paid) and $100 he borrowed "last week" to buy five feeder calves. The farm is 120 acres, little or none in cultivation. They have 200 to 300 chickens, eight cows, four horses, two sows, twenty pigs, forty sheep, and the feeder calves. He owns a '38 60 V8 automobile and a year old tractor. He farms on shares two other small tracts of land. He owes no grocery or clothing bills. He participates in the government soil conservation program. They receive from $5.50 to $7.50 a week from sales of cream. They valued the eggs from their chickens at $3 a week.

From the record the Commission could reasonably have concluded that respondent was comfortable, all her needs, food, clothing and shelter, were being adequately supplied, and the medical treatment she was receiving was adequate. The Commission was not required to accept as true the testimony as to the reason for transferring the note and $446 cash. It was shown by all the witnesses that the money, which allegedly was to be used for respondent's burial, was forthwith applied to the purchase of the farm. The policy was cashed in, and the cash and note were transferred following rejection of the first application for benefits, the rejection being for the reason that she had the policy and note. The professed intention for cashing in the policy—to provide money for future burial expense—might have been deemed by the Commission inconsistent with cashing in a policy which could be converted into paid-up insurance for a larger amount on death than was then presently realized as cash value. The sequence of events—rejection of application because respondent had the policy and the note, thereafter cashing in the policy and transferring the proceeds and note to the son-in-law, then new application for benefits—strongly suggests the intention to transfer property to render respondent eligible for benefits.

It is urged that such transfer is immaterial since the cash value of $446 plus the "worthless" note did not constitute *negotiable* security in the sum of $500 or more," ownership of which under subparagraph (2) of the new section 11 renders an applicant ineligible for benefits. Subparagraph (1) renders one ineligible who "has made an assignment or transfer *of property* for the purpose of rendering himself

eligible for benefits.'' Subparagraph (2) is only one of the tests of eligibility. To be eligible for benefits one must also show, under subparagraph (6), that she does *not* have ''earning capacity, income, or resources, whether such income or resources is received from some other person or persons, gifts or otherwise, sufficient to meet his needs for a reasonable subsistence compatible with decency and health.'' Even had the Commission found that respondent in this case was in need of new teeth and glasses, certainly the $446 cash would many times over have provided these items. A ''transfer of property'' defeating eligibility under subparagraph (1) need not merely be property in excess of the figures mentioned in subjaragraphs (2), (3), or (4), but may also be resources which, if retained, would disqualify under subparagraph (6). The Commission could have found that respondent had resources and was receiving as ''gifts or otherwise'' everything she needed ''for a reasonable subsistence compatible with decency and health'' at the time of the hearing, and that if in fact there was a real need for new teeth and glasses, she had ample resources in the cash value of $446 to more than meet such ''need,'' hence she could not urge such ''need'' as grounds for enrollment after depriving herself of the means for meeting it by transferring such cash value to her son-in-law.

We do not rule that we would make the inferences and reach the conclusions above outlined were we considering this matter *de novo.* We do rule that the hearing and decision of the Commission cannot be held on this record to have been ''unfair,'' ''arbitrary'' or ''unreasonable,'' and that so holding we are without jurisdiction to set aside the order denying respondent the right to benefits. Of course it should not be necessary to add that such denial in no sense precludes respondent from making a new application based on new conditions, if she feels at any time that her situation warrants it.

It follows that the judgment of the circuit court must be reversed, and the record remanded to that court with directions to affirm the decision of the Commission. It is so ordered.

*Bland, J.,* and *Shain, P. J.,* concur; *Cave, J.,* not sitting.