Lindsey V. UNDERWOOD and Nellie R. Underwood, Plaintiffs-Appellants,

v.

STATE DEPARTMENT OF PUBLIC HEALTH & WELFARE, Defendant-Respondent.

No. 7485.

Springfield Court of Appeals.

Missouri.

Feb. 7, 1956.

Arno L. Ponder, Poplar Bluff, for plaintiffs-appellants.

Elmore G. Crowe, H. Burks Davis, Jefferson City, for defendant-respondent.

STONE, Judge.

The applications of Lindsey V. Underwood and Nellie R. Underwood, his wife (hereinafter called claimants), for old age assistance benefits under Chapter 208 (hereinafter referred to as benefits) were denied by the Division of Welfare in September, 1954, and, after hearing on appeal [Section 208.080], by the Director of Public Health & Welfare (hereinafter called the Director) on March 1, 1955. (Except as otherwise noted, all statutory references are to RSMo 1949, V.A.M.S.) Claimants appeal from the judgment of the Circuit Court of Butler County affirming the Director's decision.

Lindsey, then 70 years old, and Nellie, then 72 years old, both of whom had children by prior marriages, were married on June 15, 1947. After living in Arkansas about one year, Lindsey sold his farm there for $3,000 and Nellie sold her former home in Harviell, Missouri, for $1,300; and, in November, 1948, claimants purchased a 10-acre tract on Highway 53 in Butler County, Missouri, for $3,500. When they sold this 10-acre tract on June 10, 1952, to the Alfred

Doyles for $4,000, the Doyles paid $1,000 in cash and executed a secured note for $3,000, payable in annual installments of $1,000 each, to Taylor Underwood and L. A. Pennington, the oldest children of Lindsey and Nellie, respectively. Nellie insisted that these children were "just holding" the $3,000 Doyle note for claimants, and that the $1,000 annual payments on this note had been made to claimants and by them deposited in their bank account in the Bank of Poplar Bluff. However, the ledger sheet reflecting deposits in and withdrawals from claimants' bank account shows that, after June 10, 1953, when the first annual installment of $1,000 became due on the Doyle note, claimants made no single deposit larger than $175 and made aggregate deposits of only $381.10.

On January 11, 1949, Lindsey purchased a 40-acre tract for $2,800 and took title in his name alone. On October 18, 1952, claimants sold this 40-acre tract to the Andrew Jordons for $2,800 or $3,000, of which $500 or $700 was paid in cash and the balance of $2,300 by a secured note payable in annual installments of $500 each. When the Jordons were unable to meet their maturing payments, they told claimants "you will have to take it back." But, instead of this tract being reconveyed to claimants (or to Lindsey individually), it was conveyed to Taylor Underwood, Lindsey's oldest son, on February 26, 1954; and, on the following day, the $2,300 note secured by deed of trust covering this tract was cancelled of record. According to Nellie, Lindsey owed Taylor for $1,300 furnished by Taylor about 1950 when claimants repurchased Nellie's former home in Harviell, for $6 paid by Taylor on a hospital bill owed by Lindsey, and for small contributions from time to time when Taylor would "maybe give us a dollar or two or three or four, or maybe bring us a load of groceries," the aggregate amount of which Nellie declined even to estimate. Nellie told Taylor that "if he would pay up the insurance and taxes and settle with the other heirs that they (Jordons) could make him a deed and that was the way they done it."

Although Taylor Underwood, who owns a 300-acre farm in the St. Francis River bottom with 180 acres in cultivation, did not state or even estimate the total amount of his father's alleged indebtedness to him, Taylor testified that such indebtedness as of February 26, 1954, when the Jordons conveyed the 40-acre tract to him, was in excess of $2,300. According to Taylor, his father's indebtedness included $1,300 advanced by Taylor for the repurchase of Nellie's former home in Harviell, "something over $600" paid on a medical or hospital bill incurred by Lindsey in 1952, and a substantial sum, the exact amount of which "I don't remember—it was six or eight or seven hundred dollars altogether, I know," paid by Taylor on expenses incident to his mother's last illness and burial in 1945. Taylor said that all of these alleged advances were made in cash. The plain import and intent of Nellie's testimony was that, by conveyance of the Jordon tract to him, Taylor not only was paid in full for any alleged indebtedness owing by his father but also received some excess consideration or value for which Taylor would have to "settle with the other heirs" or "fight it out with the other heirs"; but, although the consideration recited in the deed from the Jordons to Taylor was $2,500, Taylor's testimony was that he had told claimants that, for conveyance of the Jordon tract to him, "*they* (claimants) *would be allowed $2,000 on what they owed me.*"

Vague and indefinite as he was about why the *Doyle* note for $3,000 had been made payable to L. A. Pennington and himself, Taylor's recollection was that Nellie had said "when she sold that she was going to make part of it to me on account of them owing me"; but, Nellie readily conceded that the reason for the Doyle note having been made payable to claimants' sons "wasn't because you (Nellie) owed them anything but (so that) in the event you or Mr. Underwood died they would get it." On account of his health, Lindsey did not appear at the hearing.

■ The foregoing will suffice to exemplify the record upon which the Director

found that "claimants did not convince us that they owed Taylor Underwood valid debts equal to the fair market value of the (Jordon) property transferred" nor "that claimants received the yearly payments from the Doyle note," and that claimants were ineligible for benefits because they had made transfers of property which, under Section 208.010, as amended Laws of 1953, p. 644 (in effect at all times herein material), were presumed to have been made for the purpose of rendering claimants eligible for benefits or increasing their need therefor, in that such transfers were not made for "fair and valuable consideration" within the statutory definition *excluding* "past support, *contributions* or services rendered by a relative to a claimant". *Assuming* the statutory presumption to be rebuttable, the trier of the fact (in this instance the Director) was not required to accept as true the simple statements of Nellie and Taylor that the transfers under scrutiny were not made for the purpose of rendering claimants eligible [Johnson v. State Department of Public Health and Welfare, Mo.App., 283 S.W.2d 147, 149], nor either of their partially conflicting explanations as to the alleged reasons and considerations for the transfers. Norman v. State Department of Public Health and Welfare, Mo.App., 283 S.W.2d 143, 146 (4, 5), and cases there cited.

Since we have no right to try the case de novo or to pass upon the credibility of the witnesses or the weight of the evidence [Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 820(5); Taylor v. State Social Security Commission, Mo. App., 181 S.W.2d 209, 210–211(1); ·Chapman v. State Social Security Commission, 235 Mo.App. 698, 147 S.W.2d 157, 159(3)], it is manifest that, if the Director concluded that claimants failed to sustain the burden cast upon them to prove their eligibility [Linton v. State Department of Public Health and Welfare, Mo.App., 252 S.W.2d 841, 843(2); Bare v. State Social Security Commission, Mo.App., 187 S.W.2d 519, 520 (2); Edwards v. State Social Security Commission, Mo.App., 187 S.W.2d 354, 358 (3)], we should not, upon the record pre-

sented, interfere. Nichols v. State Social Security Commission, 349 Mo. 1148, 164 S.W.2d 278, 281(9); Norman v. State Department of Public Health and Welfare, supra, 283 S.W.2d loc. cit. 146.

The judgment should be and is affirmed.

McDOWELL, P. J., and RUARK, J., concur.