JASPER G. W. MOORE, RESPONDENT, v. STATE SOCIAL SECURITY COMMISSION, APPELLANT.—122 S. W. (2d) 391.

Kansas City Court of Appeals.   December 5, 1938.

*Roy McKittrick,* Attorney-General, and *Aubrey R. Hammett, Jr.,* Assistant Attorney-General, for appellant.

*Gilbert Barlow* for respondent.

CAMPBELL, C.—Jasper G. W. Moore, hereinafter called claimant, filed with the State Social Security Commission claim for pension or old age assistance on or about June 5, 1935. The commission sustained the claim in July, 1937, and awarded claimant $16 per month. Payments were made under the award until February, 1938, at which time payments were discontinued. Thereafter, the exact time is not disclosed, claimant applied to the commission for a reconsideration of his application for benefits. The latter application was heard and denied on the ground claimant had "adequate means of support, income, or other resources to provide a reasonable subsistence compatible with decency and health." Claimant appealed to the circuit court where, upon trial *de novo,* the court adjudged claimant be reinstated on the rolls of the old age assistance and that he receive assistance from the commission. The commission has appealed.

The facts are claimant was over 70 years of age, owned no property except household furniture bought by himself and wife 49 years before the trial; was unable to work save for "an hour or so" in the garden; the wife owned a few chickens; he, his wife and their unmarried daughter, Faye, 28 years of age, lived in a 6 or 7 room house, the rental of which was $10 per month; Fay taught school 9 months in each year and received therefor $70 per month. From her earnings she supported herself and parents.

It is not claimed the claimant has sufficient means of support separate and apart from the earnings of his daughter Fay. The commission contends claimant is not "in need" and for that reason his claim for benefit should be denied. This contention proceeds upon the theory that claimant's daughter has been supplying his "needs," can continue to do so, and hence he does not come within the pro-

visions of the Laws of Missouri, 1937, pages 467-478, known as the Social Security Act.

Section 21 of the Act directs the commission to comply with any federal law relating to the distribution of funds of the United States duly appropriated ''for social security benefits, and to comply with any and all rules and regulations attached to or made a part of such Appropriation Act and not inconsistent with the Constitution and laws of Missouri.''

Section 1 of the Federal Social Security Act of August 14, 1935, is as follows:

''For the purpose of enabling each State to Furnish financial assistance, as far as practicable under the conditions in such State, to aged needy individuals, there is hereby authorized to be appropriated for the fiscal year ending June 30, 1936, the sum of $49,750,000, and there is hereby authorized to be appropriated for each fiscal year thereafter a sum sufficient to carry out the purposes of this title. The sums made available under this section shall be used for making payments to States which have submitted, and has approved by the Social Security Board, established by Title VII (hereinafter referred to as the 'Board'), State plans for old-age assistance.''

In arguing that claimant is not an ''aged needy individual,'' within the meaning of that phrase as used in said section 1, counsel for the commission say:

''In hearings before the Committee on Finance, U. S. Senate, 74th Congress, first Session S. 1130, p. 58, Mr. Edwin E. Witte, Executive Director Committee on Economic Security, stated:

''Coming to the question of the number of the aged who are dependent. In our report there is a statement that some newspapers completely misinterpreted because they did not look at the very next sentence. The sentence is that conservatively one-half of the people now over sixty-five need support, are dependent on some one else for support. That does not mean that they are dependent on the public. As we state in our report, the largest number of people who are dependent are supported by their children, and under this legislation they will continue to be supported by their children and should be so supported. The ones who are dependent upon the public for support are a much smaller number.

''Also will be found in hearings before Committee on Ways and Means, House of Representatives, 74th Congress, first Session on H. R. 4120, p. 83 the following statement by Dr. Witte before the above committee.

''At this time, as a result of the depression that percentage had undoubtedly risen. The old people have lost their savings, just like many other people, and for old people that means an irreparable loss. That does not mean that this number of people are dependent upon the public for support. In a newspaper account which I noted this

morning, the committee's report was so interpreted. The great number of old people who are dependent have been and we expect will continue to be supported by their children. This bill does not contemplate that where children are able to support their parents they should not do so. This bill contemplates that where old people do not have any means to support themselves and no children able to support them, they shall be supported by the public in a decent and humane way through a pension system.

"It is not difficult to see what the intention of the chairman of the committee appointed to draft this bill thought the Federal Act should mean with regard to need and at the hearing before these committees they were so informed as indicated by the above quotations from the record."

If the federal act "does not contemplate" that an aged person who is unable to work has no property but has a child who can support him is not "needy," then the law should have so said in plain words.

The legal meaning of the word needy is "indigent;" necessitous; very poor." [45 C. J. 587.] We must, therefore, in the absence of a definition in the Act, ascribe to the word its ordinary legal meaning. Claimant has no property or right in property of any value. Thus he is necessitous, very poor, needy. But we do not put our decision on the ground he is "needy" within the meaning of the federal act for the reason that the state act controls the present proceeding.

Sections 11 and 12 of the State act are the only sections which define the classes coming within the act and the classes excluded from benefits thereunder. Section 11 provides that the amount of benefits which any person shall receive shall be determined with due regard to the *resources* of such person and his expenditures; that the amount to be received shall when "added to all other income and support" be sufficient to provide the recipient "with a reasonable subsistence compatible with decency and health." It will be noted this section relates solely to the amount of benefits which shall be paid to "any person," and designates the classes of persons to whom benefits shall not be paid.

Section 12 is the only section which designates the classes of persons to whom benefits shall be paid. It is conceded claimant, in so far as age and residence are concerned, comes within said section 12. So, the question boils down to whether or not he is within clause 2 thereof which reads, "is incapacitated from earning a livelihood and has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health, and is therefore without adequate means of support."

Though claimant is incapacitated from earning a livelihood the question remains, has he income or resources sufficient to maintain him in decency and health? If the answer is yes, then he has ade-

quate means of support. If the answer is no, then he does not have adequate means of support.

The word "resources" has thus been defined: "Money or any property that can be. converted into supplies; means of raising money or supplies; available means or capability of any kind." [54 C. J. 723.]

The word "means," when used in reference to property, signifies "Estate; income; money; property; resources." [40 C. J. 18.] The New Century Dictionary defines "means" as "disposable resources."

The words resources, income and means refer to property or capabilities of producing property and do not include gifts which may or may not be made at some future time.

No court or lawwriter, so far as our research has disclosed, has ever said that an indigent person whose only support is contributions made by one who is not under legal duty to make them, has resources, means or means of support. The law recognizes and enforces rights which are legal and none other.

It may be that if benefit of the law is denied claimant his daughter Fay, will continue her contributions, but the law will not compel her to do so for the reason she is not under legal duty to support her parent.

It must be remembered section 11 names the classes of persons excluded from benefit under the Act; and that persons in the situation of claimant are not within any of the classes thus excluded. Whether it was wise or unwise not to withhold benefits from one who has a child willing and able to support him is a matter for the attention of the Legislature and not a question for the courts.

The commission argues the benefits payable under the act are not pensions. The phrase "Pensions or old age assistance" is used in several sections of the Act. Whether the benefits therein provided are or are not pensions is of no moment.

It is argued the court found that claimant was not receiving adequate support and for that reason ordered that claimant be reinstated on the old age assistance rolls.

The court arrived at the correct result and we are not concerned with the reasons which caused that result.

The judgment is affirmed. *Sperry, C.,* concurs.


PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. *Shain, P. J.,* and *Bland, J.,* concur; *Kemp, J.,* not sitting.