BEN F. HOWLETT, RESPONDENT, v. STATE SOCIAL SECURITY COMMISSION, APPELLANT.—146 S. W. (2d) 94.

Springfield Court of Appeals. December 14, 1940.

232

*Roy McKittrick,* Attorney-General and *Aubrey R. Hammett, Jr.,* Assistant Attorney-General for appellant.

*David W. Hill* for respondent.

TATLOW, P. J.—The hearing before the Commission was on November 8, 1939. The finding of the Commission is in the stereotyped form, as follows:

"That the claimant has income, resources, support and maintenance to provide a reasonable subsistence compatible with decency and health and is not found to be in need. Therefore, claimant does not come within the purview of the statute and application for old age assistance is denied."

The Commission appealed the case to the Circuit Court, and the Circuit Court rendered a judgment on January 19, 1940, which contains the following finding:

"Finds that the plaintiff, Ben F. Howlett, is now and was, at the time he filed his application for old age assistance, eligible under the laws of this state for old age assistance, and that the decision of the State Social Security Commission, on his appeal from the decision of the County Commission, in denying to him any such aid, is unfair, arbitrary and unreasonable and that the said decision of the State Social Security Commission should be reversed and set aside and that this cause should be remanded to the State Social Security Commission for redetermination according to the decision of this court (see Branson v. State Social Security Commission, 139 S. W. (2d) 551).''

The judgment of the court is in accordance with the above finding.

Respondent has not filed a brief, but argued the case orally.

The undisputed facts are that this plaintiff has, since November, 1935, been entirely supported by his son and has received the necessities of life, sufficient, at least, to keep him out of the poorhouse. The respondent was born on May 1, 1860, and has had no property of any kind for twelve years. His son has been his sole source of support. The respondent and his son both live at the Gibbons Hotel, Poplar Bluff, Missouri. They occupy separate rooms, for which the son pays $30.00 per month—that is, $15.00 a month for each room. The son also pays for all of respondent's meals. Most of the time respondent eats at the restaurant in the Dunn Hotel in Poplar Bluff, Missouri. His meals amount to approximately $20.00 per month and are paid for as they are consumed. He sends his laundry each week to the Metropolitan Laundry; the expense therefor averages $1.00 per week, for which the son pays. The son also purchases for the respondent his clothing; the expenditures therefor amount to approximately $5.00 per month. The rooms are comfortable. The respondent owes no one except for an operation which was performed. He had a place cut out of his neck, which he was not able to pay for. The doctor said it was a cancer. He did not ask the doctor what his bill was as he did not have the money to pay for it and his doctor had not yet sent him a bill. Respondent is now a widower, his wife having passed away two years ago. His son was fifty-one years old on December 3, 1939. His son has varicose veins and is liable to break down at any time. His son has a daughter either twenty-four or twenty-five years of age. She is working in Detroit, Michigan. She is practically self-supporting with what help her father is able to give her. The respondent testified that he did not think that his son was really financially able to support him. His son testified, concerning his financial ability, as follows:

"Q. Your father figures here for decent living $44.50 a month. Are you really able under your circumstances to furnish that, or does he skimp himself and come below that in his eating? A. He won't eat

right. He is afraid to eat. He is afraid he is taking too much out of my salary.

"Q. Are you able to pay $44.00 a month? A. Well, no, and keep myself going like I should."

He was barely able to meet these obligations out of the $80.00 a month that he had been receiving as day clerk in the Dunn Hotel, where he was employed from month to month. His salary was raised to $100.00 in October of 1939. The son testified that his health was all right with the exception of varicose veins, which interfered with his work as he was required to be on his feet for twelve hours each day. He weighed 200 pounds and was only five feet four inches in height. He had been over-weight since he was fourteen years old. There is no evidence that he has any property of any kind, or has been able to save anything.

This is all of the evidence that we can find in the record to support the finding of the Commission.

Under the cases of Price v. State Social Security Commission, 121 S. W. (2d) 298 (this court); Moore v. Social Security Commission, 122 S. W. (2d) 391, l. c. 394 (K. C. App.); Bronson v. Social Security Commission, 139 S. W. (2d) 551, this case should be affirmed. These cases were under the 1937 law. The instant case is under the 1939 law.

Section 11 of the 1937 Act (Laws of 1937, p. 473) has been amended by adding thereto paragraph (6), further prohibiting the payment of benefits to persons coming within the paragraph. It now reads:

". . . Benefits shall not be payable to any person who:

. . . . .

"(5) is an inmate of any public institution at the time of receiving benefits. An inmate of such an institution may, however, make application for such benefits, which if granted, shall not begin until after he or she ceases to be an inmate.

"(6) has earning capacity, income, or resources, whether such income or resources is received from some other person or persons, gifts or otherwise, sufficient to meet his needs for a reasonable subsistence compatible with decency and health."

As we see it, the question presented in the instant case is whether paragraph (6) places upon the son in the instant case the absolute and unqualified legal duty to support his dependent father out of his meager earnings. We do not think it does.

"At common law a child is not bound to support its parents or grandparents." [46 C. J., Parent and Child, Section 73, p. 1279.] This is also the Missouri rule, McCullough v. Powell Lbr. Co., 205 Mo. App. 15, l. c. 27, 216 S. W. 803, where it is said: ". . . The deceased was under no legal obligation to support his father and mother, brothers and sisters, and therefore neither of them had any legal claim upon him for support, and his contribution to their support and maintenance was at the time of his death wholly voluntary."

Corpus Juris further says: "It is generally held to be the common-law duty of a parent to support his minor children, and of a husband to support his wife; but beyond this a person is under no legal obligation, in the absence of statute, to support his poor relations. However, for the purpose of indemnity to the public against the maintenance of paupers, statutes have been passed imposing upon kindred, in certain degrees, liability for the support of their indigent or pauper relatives, and such statutes have been held constitutional. A statute of this kind is remedial and, like other remedial statutes, is to be liberally construed. . . ." [48 C. J., Paupers, Section 147, p. 508.]

Giving to Section (6) a liberal construction, it clearly does not purport to place upon the son the absolute and unqualified duty to support his indigent father. It only does so in a vary indirect way—that is, by denying the parent assistance, if the son, although able to support his father, refuses to do so. It places upon the son no enforceable legal obligation. It relies upon public opinion to coerce him to do so. If he is thick-skinned enough to disregard public opinion, the only way that an indigent father (such as the one in this case) can get assistance under the statute, is to go to the poorhouse and then make application under paragraph (5) of the Act so as to enable him to get out of the poorhouse. This is a very drastic remedy so far as the dependent father is concerned. It visits upon the parent the omission of the son, but leaves the son's pocketbook entirely unaffected. Ordinarily no coercion is required to compel a child who is able to do so to support an indigent parent. The court will take judicial notice of this fact. In addition to this, it clearly appears from a report in a hearing before the Committee on Finance of the United States Senate. The report contains this paragraph: ". . . The great number of old people who are dependent have been and we expect will continue to be supported by their children. This bill does not contemplate that where children are able to support their parents they should not do so. This bill contemplates that where old people do not have any means to support themselves and no children able to support them, they shall be supported by the public in a decent and humane way through a pension system." [Moore v. State Social Security Commission, 233 Mo. App. 536, 122 S. W. (2d) 391, l. c. 393.]

This is undoubtedly the intention of the Missouri statute providing for such assistance. Observe that it is only when the child is *able* to do so that he is even expected to shoulder the economic burden of doing so. Even where he is abundantly able, the Missouri statute has not yet placed that duty on him, which it would seem, under the authorities, that the Legislature has the power to do—and may eventually do. There is no doubt but what the 1939 law has made a material change in the law with reference thereto. Under the 1937 statute the state could not refuse assistance even though the child was able, ready and willing to support his indigent parent. The parent still had the

right to refuse to accept such gratuity and insist upon his or her right to old age assistance. Under the 1939 law, if the child is able to, and is, supporting the parent, the parent cannot get assistance from the state. He can only do so if the child, although able to support him, absolutely refuses to do so. He can then get assistance by going to the poorhouse and making application under Section (5),—and in no other way. There is not one line or syllable in the 1939 statute, that we are able to find, to justify the Commission in denying this respondent his legal right to receive assistance, merely because his son, out of his meager earnings, has, since November, 1935, supported his father and kept him out of the poorhouse and will continue to do so if assistance is denied to respondent.

There is no moral obligation upon the son to support his father unless he is, in fact, financially able to do so. It is not for the Commission to determine the financial ability of the son, based upon the standard fixed to determine right to assistance. In other words, in the instant case, the Commission evidently proceeded upon the theory that the son, as well as the father, was applying for assistance. It is perfectly apparent, at least to us, that an entirely different rule applies in determining whether the son possesses the financial ability to place upon him a moral obligation in the premises. He is certainly entitled to expend such amounts as will keep him properly clothed, considering the fact that he is a day clerk in a hotel, required to meet the public generally, and should appear neatly and appropriately dressed. He is at least entitled to save something out of his earnings, in case of sickness, and to carry accident and health insurance, to keep him off relief or off of the pension role when he reaches the required age, before it is even his moral duty to relieve the state of the legal duty to render to his father assistance under the Social Security Act. In our opinion the Commission is not authorized under this statute to judge the financial ability of the son by the standard fixed by the statute to determine whether the father is entitled to assistance. To do so is, in our opinion, a misconstruction of the statute. However, it seems to us that the Kansas City Court of Appeals, in a very recent case, has placed such construction upon the statute, Lizzie Etta Buettner v. The State Social Security Commission of Missouri, 144 S. W. (2d) 864, 865, where the facts are substantially parallel to the facts in the instant case. The court correctly distinguishes the cases *supra* as having been rendered under the 1937 Act instead of the 1936 Act. It quotes paragraph (6) *supra,* and then says: ''The legislature has amended the law with respect to the very matter we there discussed. Whether or not the matter in which the legislature acted was wise or unwise, or whether the personnel of this court would have favored the amendment, is not a question with which the court is concerned. It is for the court to ascertain

and declare the intention of the legislature as the same is expressed in the language of the statute.''

It is equally true that it is the duty of the court to determine the legal effect of the amendment. We do not see any basis for the conclusion apparently reached in that case. The fact that the son-in-law, out of his meager earnings, had in the past and would in the future render the applicant sufficient support and assistance to keep her out of the poorhouse, if the state refused to give her assistance, does not show that the son-in-law was financially able to do so. It does not justify the Commission in refusing to place the applicant on the rolls for assistance. Neither does it justify the Commission in using the standard fixed by the Social Security Act for the determination of whether the applicant has sufficient earnings, income or resources to be entitled to benefits, to apply the same rules to the son-in-law in that case (or the son in this case) for the purpose of determining their financial condition. Whether the son in the instant case is financially able to continue to support the applicant so as to relieve the state from rendering respondent assistance under the Social Security Act is, in our judgment, to be determined entirely from the reasonable needs of the son himself, and requires consideration by the Commission of the matters hereinbefore referred to, keeping in mind that, under the 1939 Act, the primary duty is still on the state, and not on the son, to furnish assistance. The Act fixes a rule for determining whether the applicant has sufficient earnings, income or resources to prevent him from being assisted. It does not fix a rule for determining whether a son, or other near relative, is financially able to, and should, relieve the state from rendering assistance to such an applicant. The question of the son's financial ability is to be determined from the evidence in the particular case, after considering all of the conditions and circumstances affecting his needs, some of which have been heretofore mentioned.

In the instant case we do not find any substantial evidence to support the conclusion of the Commission that the applicant should be denied assistance because his son is financially able to relieve the State of its duty to render such assistance. On the contrary we think that the finding of the Commission in denying assistance to the applicant is, as a matter of law, both arbitrary and unreasonable and has no basis in fact to support it, and, hence, the judgment of the trial court should be, and is affirmed.

The writer of this opinion deems the conclusion here reached contrary to the decision of the Kansas City Court of Appeals in the Buettner case *supra,* and this court, upon its own motion, certifies and transfers this cause to the Supreme Court under Section (6) of Article 6 of the 1884 Amendment to our Constitution relating to Courts of Appeal.

The Clerk is, therefore, ordered to certify the record in this case to the Supreme Court. *Smith* and *Fulbright, JJ.,* concur.