BEN F. HOWLETT v. STATE SOCIAL SECURITY COMMISSION, Appellant. —149 S. W. (2d) 806.

Court en Banc, March 22, 1941.

*Roy McKittrick*, Attorney General, *Aubrey R. Hammett, Jr., John T. Harding, Elmore G. Crowe* and *Charles W. Hess, Jr.*, Assistant Attorneys General, for appellant.

*David W. Hill* for respondent.

HAYS, J.—Respondent. Ben F. Howlett made application for old age assistance under the State Social Security Act of 1937. [Laws of 1937, p. 467 et seq.; as amended: Laws of 1939, p. 738.] His application was denied and, after a hearing before the State Commission, the denial was affirmed. Howlett then appealed to the circuit court, which reversed and remanded the case to the commission "for redetermination in accordance with this decision." From this judgment the commission appealed to the Springfield Court of Appeals. An opinion was there filed affirming the judgment of the circuit court; but the Judge who wrote same concluded it was in conflict with the decision of the St. Louis Court of Appeals in the case of Buettner v. Social Security Commission, 144 S. W. (2d) 864. At his request and pursuant to the direction of Section 6, Article VI of the Amendment of 1884 to the Constitution of Missouri the case was certified and transferred to this court for determination. By that constitutional provision it is our duty to rehear and determine the cause in the same manner "as in case of jurisdiction obtained by ordinary appellate process." It is not an open question in this court as to whether such conflict does in fact exist. [Epstein v. Pa. Railroad, 250 Mo. 1, 156 S. W. 699, 48 L. R. A. (N. S.) 394.]

Undisputed evidence shows that Howlett at the time of his application for assistance was 78 years old, not gainfully employed and physically incapable of making a living. He did not own nor possess real or personal property or any interest therein and had owned none for a number of years. He had made no assignment for the purpose of becoming eligible for a pension and he was and had been for many

788

years a citizen and resident of Butler County in this State. He has never been an inmate of a public institution.

Howlett was living in a hotel room, the rental of which—fifteen dollars per month—was paid by an adult son who also supplied his father with board at a restaurant which cost approximately twenty dollars a month. The son also supplied the applicant with clothing and laundry. The total cost of the father's living expenses thus furnished by the son averaged forty-four dollars per month. At the time of the hearing the son was making one hundred dollars per month, out of which, in addition to his own living expenses and those of his father, he made occasional irregular contributions to an adult daughter. Sometime before the hearing Mr. Howlett had had a surgical operation performed and the expenses of this had not been paid. While the son testified that at times his father did not eat as much as he should because he was afraid the expense would too greatly tax the son's income, there is no substantial evidence tending to show that the elder Howlett's living conditions were not "compatible with decency and health."

The appellant contends that the circuit court, in remanding the cause for "redetermination in accordance with this decision," exceeded the power given it by the statute governing appeals from the Social Security Commission. Appeals are strictly creatures of the statute and this is particularly true of appeals to the courts from the determination of administrative tribunals exercising quasi-judicial functions. The State Social Security Commission is an executive governmental agency (State ex rel. v. Hackman, 314 Mo. 33, 282 S. W. 1007); and, like the Workmen's Compensation Commission, the Public Service Commission and the State Highway Commission, exercises quasi-judicial powers (State ex rel. v. Brown, 323 Mo. 382, 19 S. W. (2d) 484; Hughes v. State Board of Health, 345 Mo. 995, 137 S. W. (2d) 523; State ex inf. v. Murphy et al. (en banc), 347 Mo. 484, 148 S. W. (2d) 527.) The power and jurisdiction of a court upon such appeal is limited to that granted by the terms of the statute which creates the right. [Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909; State ex rel. Missouri Gravel Co. v. Workmen's Compensation Commission (Mo. App.), 113 S. W. (2d) 1034.] The present appeal was taken after the enactment of the 1939 amendments to the Social Security Act and is governed by Sec. 16 of said act, as so amended. [Laws of 1939, p. 736.] This section provides that if upon appeal to the circuit court that tribunal shall find that the applicant was not granted a fair hearing by the commission, or that the determination of the commission was "arbitrary and unreasonable," it shall "remand the proceedings for redetermination of the issues by the State Commission." Under the Workmen's Compensation Act (Sec. 3732, R. S. Mo. 1939) the court, upon appeal from a decision of the Compensation Commission, is

authorized to "modify, reverse, remand for rehearing or set aside the award." Yet it is held that it may not remand with directions to enter a particular finding or particular form of award. [Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 60 S. W. (2d) 44, 87 A. L. R. 953; Schulz v. Great Atlantic & Pacific Tea Co., 331 Mo. 616, 56 S. W. (2d) 126.] But it is also held that where the circuit court has reversed and remanded with directions, this is to be treated as a simple remand and that in such instance the decision of the court upon any question of law involved in the case is binding upon and must be followed by the commission as the law of the case. [Brocco v. May Department Stores, 227 Mo. App. 395, 55 S. W. (2d) 322.] While the words "for redetermination in accordance with this decision," used by the circuit court in its judgment, may be surplusage, they do not affect the validity of such judgment and in point of fact the Social Security Commission is bound to follow such ruling as is made by the court of last resort upon questions of law, such ruling being considered the law of the case.

What is meant by the statutory language referring to an arbitrary and unreasonable determination by the commission? Any decision of the commission is like a general judgment of a court of law in this: that it involves the solution of two subsidiary questions— a question of fact and one of law. The answers to these questions form the major and minor premises from which the ultimate finding of the commission for or against the applicant must be derived as a conclusion. The commission must, from the evidence adduced before it, first determine what the facts of the case are. It must conclude that from the constitutive facts so found certain legal consequences follow, to-wit: that the applicant is or is not entitled to assistance—a determination of law. It is possible that the commission might act arbitrarily and unreasonably either in finding the facts or in applying the law thereto. We cannot and we do not say that the commission's decision upon the facts is arbitrary and unreasonable simply because we might possibly have found the facts differently upon the same evidence; this was within their province alone. But if the ultimate decision of the commission is not based upon substantial evidence, the finding must be characterized as arbitrary and unreasonable and the determination reversed. The rendition of such a judgment would constitute no invasion of the statutory fact-finding power of the commission, because the court would not be making a finding of fact; it would be merely reviewing a question of law. [Kristanik v. Chevrolet Motor Co. (en banc), 335 Mo. 60, 70 S. W. (2d) 890.]

The question is somewhat different when the contention is made that the commission erred in applying the law to conceded or undisputed facts, or to facts as specifically found by them. A given proposition either is the law or it is not. There is no middle ground.

Granted that certain facts are admitted to exist or are found to exist by the commission upon the record evidence, then the commission, in deciding that upon those facts the applicant is or is not entitled to assistance, either applies and follows the correct principle of law or it does not. If it does not follow the law its decision is clearly arbitrary and unreasonable. It is true that reasonable men may and sometimes do differ as to what the law is. But, under our system of government, the final word upon this question must be that spoken by the courts.

It cannot be said that the courts, in setting aside an executive-administrative determination because it is opposed to law, invade the sphere of government assigned by the Constitution to the executive department. For the final determination of questions of law and the final interpretation of the meaning of statutes is a part of that judicial function vested by the Constitution in the courts. For this reason the commission should carefully distinguish between their findings of fact and their conclusions of law, that the courts may, while paying due deference to administrative fact-finding, be free to correct errors in legal interpretation.

For the reasons above stated it is clear that the judgment of the trial court may not be reversed for the sole reason that it exceeded its statutory or constitutional powers in the manner in which it framed its judgment in this case. We must, therefore, face the question of law upon which the merits of the case are to be determined. That question, reduced to its simplest form, may be stated as follows: If an aged person, who admittedly meets all of the other requirements of the Social Security Act, is periodically receiving as a gratuity from an adult son sufficient money to support him in a manner compatible with decency and health, is he entitled to old age assistance under the act?

■ In the first place, it is a well-recognized principle of the common law that an adult child is under no legal obligation to support his parents, however needy they may be. In Schouler on Domestic Relations, section 265, the rule is stated: "Thus may be explained what appears now a well-settled rule at the common law; namely, that there is no legal obligation resting upon a child to support a parent; that, while the parent is bound to supply necessaries to an infant child, an adult child, in the absence of positive statute or a legal contract on his own part is not bound to supply necessaries to his aged parent." In Hickman v. Mo. Pac. Ry. Co., 22 Mo. App. 344, l. c. 349, the court said: "Whatever moral obligation there may be on the part of children past majority to support their indigent parents, the law, in the absence of a statute, recognizes no legal obligation on their part to support them, or legal right in the parent to demand it." Similar remarks are to be found in McCullough v. Powell Lumber Co., 205 Mo. App. 15, 216 S. W. 803. The proposition also finds

support in the following authorities: 1 Cooley's Blackstone (4 Ed.), p. 400; Edwards v. Davis, 16 Johns. (N. Y.), 281; Stone v. Stone, 32 Conn. 142; Becker v. Gibson, 70 Ind. 239. It is apparent that an adult son is *morally* bound, in return for the care and affection bestowed upon him in his infancy, to offer to his aged parents such material help and assistance as is compatible with his resources and with his paramount duty to support his own wife and children, if any. To remedy these and similar omissions in the common law, the Statute of 43 Elizabeth, Chapter 2, was passed. Similar statutes have been enacted in many of the states of the Union. [People of Illinois v. Hill, 36 L. R. A. 634, 1. c. 636.] Moses voiced this principle in the command: "Honor thy father and thy mother that thy days may be long in the land that the Lord thy God giveth thee." And society in general has not failed to give serious heed to that command.

■ But all moral duties are not necessarily legal ones. Such is the case here. The reason is obvious. The moral duty of the child to support his parents is conditioned on his financial ability and on the presence or absence of a paramount duty to support his wife and child. Neither the courts nor any executive agency of government is competent to investigate and determine all of those delicate family relationships and moral duties here involved. The enforcement of the duty must, therefore, be left to the sanctions of religion and the persuasive force of public opinion. We are not here called upon to decide whether or not the Legislature might constitutionally enact a statute translating this moral duty into a legal one—it has not attempted to do so. Nor are we called upon to decide whether the Legislature might constitutionally deny old age assistance to one whose children although able to support him have refused so to do. Such is not the present case. The Legislature has provided for the payment of old age assistance to all needy persons who meet certain requirements. The question is: Has it refused such assistance to persons otherwise qualified who are being supported by their children? And the answer to that question must turn upon the construction to be given the legislative language.

The Social Security Act of 1937 provided that the amount of benefits to be paid thereunder "shall be determined with due regard to resources and necessary expenditures of the individual." [Sec. 11 of the Social Security Act of 1937, supra.] Section 12 of the act, which applies specifically to old age assistance, provided that such assistance should be granted to any person who "has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health," and who meet certain other requirements not herein involved. This act was construed by our appellate courts, and we think correctly so, as requiring the payment of such assistance to otherwise qualified persons, even though

they were actually receiving support from their adult child or other relatives. [Price v. State Social Security Commission (Mo. App.), 121 S. W. (2d) 298; Moore v. State Social Security Commission, 233 Mo. App. 536, 122 S. W. (2d) 391.] The basis of these decisions was this: that, as we have shown above, the support given to a parent by an adult child is not required by law, but is a pure gift or gratuity. It therefore could not be said to be income nor a resource within the meaning of the law. For the parent receiving such gift could not know from one day to another that the support so received would be continued.

By Section 11 of the Amendatory Act of March 7, 1939 (Laws of 1939, p. 739) the eligibility requirement was modified. Under the terms of the amended section old age assistance is denied to an applicant if he "has earning capacity, income, or resources, whether such income or resources is received from some other person or persons, gifts or otherwise, sufficient to meet his needs for a reasonable subsistence compatible with decency and health." [Subparagraph 6 of sec. 11.]

In construing this language of the 1939 act we must bear in mind that the precise question here under consideration has been the subject of widespread discussion both within and without the legislative halls since the adjudication for old age assistance first began. [See remarks of Senator Wagner, 79 Congressional Record 9285; Remarks of Senator La Follette, 79 Congressional Record 9273; Report of hearing before the Committee on Ways and Means, House of Rep., 74th Congress, 1st Session on H. R. 4120, l. c. 83; Report of State Social Security Commission for 1937, Appendix to Mo. House and Senate Journal, Vol. 2, p. 47; House Journal, 60th Mo. Gen. Assem., 1939, p. 342; "Index of Public Assistance in Missouri," compiled by the Statistical Division of the State Social Security Commission, Vol. 1, No. 6.] Before the passage of the Act of 1939 an amendment to Section 11 was offered, reading as follows: "(7) has any person responsible under the state law for his or her support and which said person is able to support said applicant without sacrifice to himself or family." This amendment (7) was rejected by the Legislature. It must also be borne in mind that previous to the convening of the General Assembly in 1939 the Courts of Appeals had decided the Price and Moore cases, supra, and that the Legislature was, therefore, presumably familiar with the construction placed in those cases on the provisions of the 1937 act.

In the light of these historical facts consider the unambiguous language employed by the General Assembly: "Whether such income or resources is received from some other person or persons." [Laws of 1939, sec. 11, subparagraph 6.] Pretty much all income is derived from some other person or persons. These words, therefore, cannot be taken in their ordinary significance. They cannot refer to earned

income derived from others as salaries or wages or as the purchase price for goods sold. They must refer to gratuities. But this is made clear by the next words: ''Gifts or otherwise'' [ibid.]. , This language cannot be construed except as denying assistance to otherwise qualified persons who are receiving periodically gratuities which enable them to live in decency and health. A similar position has been reached by other courts under somewhat similarly worded statutes. [Wood v. Waggoner (S. D.), 293 N. W. 188; Schneberger v. Board (Iowa), 291 N. W. 859; State ex rel. v. Borge (N. D.), 283 N. W. 521.]

Old age assistance benefits are not payments to which a citizen is entitled as a right. They are themselves gratuities given by the State to the needy, and as long as the principle of classification is a reasonable one, the Legislature may deny them to one class while granting them to another. There may be cases, and no doubt there are many of them, in which a grave injustice will be worked by the distinction here made. Sometimes children will undergo unnecessary hardships rather than incur the public odium which might attach to them if they refused to support their parents and thus made them eligible for State assistance. But it cannot be said that the distinction here involved is an unreasonable one, and any argument as to its unwisdom or injustice must be addressed to the Legislature and to the people rather than to the courts.

We are, therefore, forced to the conclusion that the circuit court incorrectly interpreted the law and for this reason its judgment must be reversed. It is so ordered. All concur.