MINNIE DUNNAVANT, DEFENDANT IN ERROR, v. STATE SOCIAL SECURITY COMMISSION OF MISSOURI, PLAINTIFF IN ERROR.—150 S. W. (2d) 1103.

Kansas City Court of Appeals. May 5, 1941.

*Roy McKittrick,* Attorney-General, and *B. Richards Creech,* Assistant Attorney-General, for plaintiff in error.

*W. G. Pendleton* and *John J. Stegner* for defendant in error.

SHAIN, P. J.—This case is brought to this court by writ of error to the Circuit Court of Cooper County, Missouri. The facts involved are that the defendant in error made application for old age assistance under the provisions of the Social Security Act of Missouri. The Social Security Commission fixed date for hearing in the Social Security office in Boonville, Cooper County, Missouri, on March 18, 1940. Due

notice was given and hearing had before Hon. Elmore G. Crowe, referee, on aforesaid date and at aforesaid place.

The award of the Commission is in words and figures as follows:

"The above claimant for benefits under the Social Security Law having submitted her claim and had a hearing on the 8th day of March, 1940, and after hearing the parties at issue, their representatives, witnesses and evidence, the State Social Security Commission finds and awards:

"(1) That the claimant owns or possesses cash or negotiable security in the sum of $500 or more; (2) that the claimant has income, resources, support and maintenance to prove a reasonable subsistence compatible with decency and health and is not found to be in need. Therefore, a claimant does not come within the purview of the statute and application for old age assistance is denied.

"Given at the City of Jefferson, State of Missouri, on this 3rd day of April, 1940.

"STATE SOCIAL SECURITY COMMISSION OF MISSOURI

"By GEO. I. HAWORTH,
"Administrator.

"(Seal)"

The applicant, defendant in error herein, duly appealed from the aforesaid award to the Circuit Court of Cooper County, Missouri. The matter was heard in the Circuit Court of Cooper County, Missouri, at the June, 1940, Term of said court.

The Commission, plaintiff in error herein, at said hearing asked declarations of law as follows:

"(1)

"The Court declares the law to be that if the court finds from the evidence that this applicant owns and possesses life insurance policies, having a cash surrender valuation of over $500 which may be surrendered to the insurance companies by applicant for an amount of money exceeding $500, then this applicant is not eligible for the benefits under section 11, subdivision 2, page 739, Laws of 1939, and the decision of the State Social Security Commission should be affirmed.

"(2)

"That if the applicant, from all the facts, is not found in need, that is, she is receiving the necessaries of life from any source whatsoever, then assistance shall be denied and the decision of the State Social Security Commission shall be affirmed.

"ROY MCKITTRICK,
"Attorney-General.
"AUBREY R. HAMMETT, JR.
"Assistant Attorney-General,
"Counsel for Defendant."

The entry of judgment in the circuit court is as follows:

"BE IT REMEMBERED, That heretofore, to-wit: On the 18th day of July, 1940, same being the Seventh Day of the June, 1940, Term, of the Circuit Court of Cooper County, Missouri, the following among other proceedings, were had and entered of record, to-wit:
"Minnie Dunnavant, Claimant, 15737

v.

"State Social Security Commission, Defendant.

"The appeal of the plaintiff from the decision of the defendant denying her claim for pension, or Old Age Assistance, having been heretofore at this term submitted to the Court for trial and by the Court taken under advisement for decision, and the defendant having asked certain declarations of law, the Court now given defendant's declaration No. 1, and refuses to give its declaration No. 2.

"The Court finds from the evidence in the record of the hearing had before the defendant, that there is no evidence that the plaintiff owns or possesses life insurance policies having a cash surrender value of five hundred dollars; and further finds from said record that the plaintiff receives no necessaries of life or support from any source whatever other than from her daughter; that such support does not render the plaintiff ineligible for the benefits claimed by her under the law applicable to her claim.

"It is by the Court, therefore, adjudged that the decision of the defendant denying the plaintiff's claim for assistance be and the same is hereby reversed, and it is by the Court ordered that the defendant, State Social Security Commission, place the plaintiff on its roll as entitled to assistance in a measure to be fixed by the Commission without regard to any assistance or support she is receiving from her daughter.

"It is by the Court further ordered that the clerk of this court mail a certified copy of this judgment to the State Social Security Commission."

It is to the above judgment that writ of error is directed.

The modern tendency of government operations by bureaus, with its undeveloped and changing aspects, leads uncertainty to recent judicial opinions touching procedure under the act. Modern social security laws are such a departure from the old horse and buggy "poor farm" days that old fashioned folk have trouble to keep up with the pace set and our lawmakers indulge in frequent amendments, both as to substantive and adjective law, in an attempt to adjust the law to meet the requirements of the new system wherein a dual administration involving national and state legislative agencies must be coordinated.

In the past few years there has been two drastic changes in the law resulting in nullifying judicial conclusions almost as soon as officially published. What is now Section 9506, Revised Statutes of

Missouri, 1939, was amended in 1939, so as to make the following provision:

". . . Benefits shall not be payable to any person who:

. . . . . . .

"(6) has earning capacity, income, or resources, whether such income or resources is received from some other person or persons, gifts or otherwise, sufficient to meet his needs for a reasonable subsistence compatible with decency and health."

Another amendment made in 1939 materially changes procedure upon review on appeal. Section 9411, Revised Statutes of Missouri, 1939, contains language as follows:

"Such appeal shall be tried in the circuit court upon the record of the proceedings had before and certified by the State Commission, which shall be in such case certified and included in the return of the State Commission to the court. Upon the record so certified by the State Commission, the circuit court shall determine whether or not a fair hearing has been granted the individual. If the court shall decide *for any reason* that a fair hearing and determination of the applicant's eligibility and rights under this law was not granted the individual by the State Commission, or that its decision was arbitrary and unreasonable, the court shall, in such event, remand the proceedings for redetermination of the issues by the State Commission." (Italics ours.)

Since the judgment of the circuit court, now before us for review, was made, several appellate court opinions have been handed down wherein the amendment of 1937 and 1939 are discussed.

On the 18th day of November, 1940, this court handed down an opinion in Buettner v. State Social Security Commission, 144 S. W. (2d) 864.

In the above case the applicant was shown to have been well cared for in the home of her daughter and son-in-law, for a period of sixteen years prior to and at the time of the hearing. The commission heard evidence as to financial condition of applicant's daughter and son-in-law and the daughter testified at the hearing that her husband was not willing to continue the support of the applicant.

In the Buettner case the commission refused assistance and on appeal to the circuit court the action of the commission was reversed and upon an appeal to this court the judgment of the circuit court was reversed, and in the opinion by this court the amendment of 1939 was considered and commented upon. In our comments, the evidence as to financial ability and inclination of the daughter and son-in-law received comment. However, this court reversed the action of the circuit court on the grounds that the commission had acted within the mandate of the statute as amended in 1939, applying to persons receiving maintenance from other person or persons at the time of the application and hearing, regardless of financial ability or in-

clination of the contributing daughter and son-in-law. Our position being that as no liability rested upon the daughter and son-in-law that is enforcible in law, the question of their financial ability does not necessarily enter into the question. Our conclusion being that if the applicant is receiving sufficient necessities from the other sources he is not entitled to relief under the act as amended.

Summarizing our comment upon the change in the law, we said, 865-6 as follows:

"It is for the court to ascertain and declare the intention of the Legislature as the same is expressed in the language of the statute. That intention is clearly expressed in the language quoted. [Johns v. State Social Security Commission, *supra*, 143 S. W. (2d) loc. cit. 165.]"

On December 14, 1940, the Springfield Court of Appeals handed down an opinion, Howlett v. State Social Security Commission, 146 S. W. (2d) 94, wherein the question of financial ability of a child to support the parent was considered. In the opinion in the above case that court commented upon our summary comment, *supra*, and said, "It is equally true that it is the duty of the court to determine the legal effect of the amendment."

While we conclude that "to ascertain and declare the intention of the Legislature" embraces the question of "legal effect," we find from a reading of the aforesaid opinion that the Springfield Court of Appeals has assumed the legal effect of the amendment to be that the question of the financial ability of the one gratuitously giving the necessary support is material to the issue of allowance or disallowance of an application regardless of the fact that proper support was being given at the time of the hearing. It is further shown that in the face of the fact that the applicant in the Howlett case was receiving, at the time, adequate support from his son still, based upon evidence as to the son's financial inability, that court upheld the reversal of the commission's finding and made its own finding and judgment as follows:

"In the instant case we do not find any substantial evidence to support the conclusion of the commission that the applicant should be denied assistance because his son is financially able to relieve the State of its duty to render such assistance. On the contrary we think that the finding of the commission in denying assistance to the applicant is, as a matter of law, both arbitrary and unreasonable and has no basis in fact to support it, and, hence, the judgment of the trial court should be and is affirmed."

The judgment of the circuit court that was affirmed by the Springfield Court of Appeals is as follows:

"The commission appealed the case to the Circuit Court and the Circuit Court rendered a judgment on January 19, 1940, which contains the following finding:

" 'Finds that the plaintiff, Ben F. Howlett, is now and was, at the time he filed his application for old age assistance, eligible under the laws of this State for old age assistance, and that the decision of the State Social Security Commission, on his appeal from the decision of the County Commission, in denying to him any such aid, is unfair, arbitrary and unreasonable and that the said decision of the State Social Security Commission should be reversed and set aside and that this cause should be remanded to the State Social Security Commission for redetermination according to the decision of this court.' [See Branson v. State Social Security Commission (Mo. App.), 139 S. W. (2d) 551.]''

The Howlett case was certified to the Supreme Court on stated reason that same was in conflict with the Buettner case, *supra.*

In an opinion handed down by this court on January 27, 1941, Chapman v. State Social Security Commission 147 S. W. (2d) 157, the construction of the language used in the amendment of 1939, Section 9411, set out above, was under consideration.

In the above case this court was not all together in agreement as to the question as to whether or not, under the wording, *supra,* the appellate court under the language "for any reason" had the right to weigh the testimony and determine and declare the award of the commission to be arbitrary or unreasonable from our consideration and conclusions based upon such consideration.

In our opinion in the Chapman case, *supra,* we approved and followed the opinion of the Springfield Court of Appeals in Clay v. Social Security Commission, 143 S. W. (2d) 165, wherein that court held as to the appellate court, "It is *wholly without jurisdiction or authority to determine the weight of the evidence in the case.*" (Italics ours.)

We have discussed the Buettner, the Howlett and the Chapman cases, *supra,* for the reason that each of these cases deal with substantive and adjective law that is involved in the review of the case now before us. Further, as the Springfield Court of Appeals had certified the Howlett case to the Supreme Court as in conflict with the Buettner case, we concluded that we should delay writing an opinion in this case until the Supreme Court opinion in the Howlett case was handed down by that court. [See Howlett v. Social Security Commission, 149 S. W. (2d) 806.]

The Supreme Court, under the provisions of the law, has written its opinion in the Howlett case just as if the case had gone to that court on an appeal direct from the circuit court, and it reversed the judgment of the circuit court outright. We conclude from the opinion, that the Supreme Court construes the amendment of 1937, touching gratuitous contributions to an applicant, in conformity with the construction placed thereon by this court in the Buettner case.

The opinion of the Supreme Court in the Howlett case has clarified as to the construction of the language quoted, *supra,* from Section 9411, Revised Statutes of Missouri, 1939.

The language used by the Supreme Court in construing the provisions, *supra,* is not the same as used in the opinion of the Springfield Court of Appeals in the Clay case and by this court in the Chapman case. However, to say that the language in the above cases is in conflict with what the Supreme Court says in the Howlett case, we conclude, would be more academic than actual.

As the opinion of the Supreme Court is final and binding upon the circuit and appellate courts of this State on a question vital to review, we feel it advisable, to the end of avoidance of even academic discussion, to include herein the clear and concisely expressed language used by the learned judge in the opinion to-wit:

"What is meant by the statutory language referring to an arbitrary and unreasonable determination by the commission? Any decision of the commission is like a general judgment of a court of law in this: that it involves the solution of two subsidiary questions—a question of fact and one of law. The answers to these questions form the major and minor premises from which the ultimate finding of the commission for or against the applicant must be derived as a conclusion. The commission must, from the evidence adduced before it, first determine what the facts of the case are. It must conclude that from the constitutive facts so found certain legal consequences follow, to-wit: that the applicant is or is not entitled to assistance—a determination of law. *It is possible that the commission might act arbitrarily and unreasonably either in finding the facts or in applying the law thereto.* We cannot and we do not say that the commission's decision upon the facts is arbitrary and unreasonable simply because we might possibly have found the facts differently upon the same evidence; this was within their province alone. But if the ultimate decision of the commission is not based upon substantive evidence, the finding must be characterized as arbitrary and unreasonable and the determination reversed. The rendition of such a judgment would constitute no invasion of the statutory fact-finding power of the commission, because the court would not be making a finding of fact; it would be merely reviewing a question of law. [Kristanik v. Chevrolet Motor Co. (en banc), 335 Mo. 60, 70 S. W. (2d) 890.]

"The question is somewhat different when the contention is made that the commission erred in applying the law to conceded or undisputed facts, or to facts as specifically found by them. A given proposition either is the law or it is not. There is no middle ground. Granted that certain facts are admitted to exist or are found to exist by the commission upon the record evidence, then the commission, in deciding that upon those facts the applicant is or is not entitled to assistance, either applies and follows the correct principle

of law or it does not. If it does not follow the law its decision is clearly arbitrary and unreasonable. It is true that reasonable men may and sometimes do differ as to what the law is. But, under our system of government, the final word upon this question must be that spoken by the courts.

"It cannot be said that the courts, in setting aside an executive administrative determination because it is opposed to law, invade the sphere of government assigned by the constitution to the executive department. For the final determination of questions of law and the final interpretation of the meaning of statutes is a part of that judicial function vested by the constitution in the courts. For this reason the commission should carefully distinguish between their findings of fact and their conclusions of law, that the courts may, while paying due deference to administrative fact-finding, be free to correct errors in legal interpretation."

Concluding as we do that the Supreme Court in the Howlett opinion has cleared the pathway of obstructing chips of judicial utterance, we are relieved of a situation confronting patriots of the American Revolution, in that we now have a lamp by which our feet may be guided. We, therefore, proceed to a review of the case before us in the light that we now have.

The applicant in this case is an old lady over 83 years of age, who for many years has resided with and has been cared for by her daughter.

The daughter testified as to the condition of her mother as follows:

"Q. What is your mother's physical condition and her mental condition? A. Her physical condition is fairly good. I have to give her medicine every once in a while. Her mental condition is just like that of old people. She's just like a child. I have to have somebody with her to take care of her all the time. Somebody is with her all of the time. She can't do anything for herself at all.

"Q. What property of any kind does your mother own, either real or personal? A. Nothing of any kind except a bed and a dresser and a few chairs that are in the house. That is all that belongs to her.

"Q. That is all of the property she has? A. Yes, sir.

"Q. What income, from any source, has she? A. None whatever. Not a dime."

It appears that prior to 1935 the home in which the mother and daughter lived in was in the name of the mother. However, on April 22, 1935, the mother deeded the property to her said daughter upon expressed consideration of $10 and other valuable considerations.

The following questions and answers appear in the daughter's testimony:

"Q. When this deed was made to you by your mother, did you pay any money for the deed? A. No, sir.

"MR. GRAVES: Q. What was the understanding or arrangement you had with your mother? A. There were no arrangements. She turned it over to me because it belonged to me. I had money in that property. We had property on Water Street and I had money in the other property we lived in and when we moved to this place I put my money in there and had it remodeled. I put my money in this place remodeling it.

"Q. Did you pay the taxes? A. Yes, all of the time. Always.

"Q. Did you pay the insurance and taxes and everything else? A. Yes, sir.

"Q. What is the property insured for? A. $3500. That is the household goods and everything—all of the property."

Further questions and answers appear as follows:

"Q. Did I understand you correctly that the only agreement was that you were to have the property because of what you had paid on it? A. Yes. It belonged to me. Sure. She wanted me to have it because it legally belonged to me, and she knew if she did not deed it to me the other children would get a part of it, and they didn't deserve it.

"Q. Since this property was deeded to you, you have continued to live there as you had before? There was no change in your living arrangements? A. Why should there be? I have supported my mother all of the time. Why should there be any change?"

There is shown evidence to the effect that the mother had two policies of insurance on her life, each in the sum of $1000 and that the daughter paid all the premiums and was the beneficiary. There is further shown evidence to the effect that the insurance has a cash surrender value of $700.

There is also evidence to the effect that the daughter, confronted with conditions that made it a task to keep the wolf from the door, has been faithful to every moral obligation of a child to a parent and has in the past and is at the present giving such subsistence and care to her aged mother as presents substantial evidence that will sustain the finding: "Sufficient to meet needs for a reasonable *subsistence* compatible with decency and health." (Italics ours.)

We construe the meaning of "subsistence" as defined in Webster's New International Dictionary, 1926, as follows: "That which furnishes her support to *animal life*; means of support; provisions, or that which procures provisions; livelihood, a *meager* subsistence." (Italics ours.)

We further take into consideration that "reasonable subsistence compatible with decency and health" is relative in meaning. In other words, what to some would be only reasonable and compatible within the sphere of their environment would be luxury and affluence to a person in another environment.

There are conditions revealed by the evidence in this case which if ruled by human sentiment, would lead us to the conclusions reached by the circuit court. However, in matters of law we are dealing with human proclivities as well as with human sympathies. Under the old poor farm law, human pride led to suffering rather than facing *odium*. Under our modern law relief has assumed an air of respectability and safeguards must be had to guard against human proclivity of greed and selfishness.

As it has been in the past, so it is in the present, good and wholesome laws in order to be maintained for the public good, must have restrictions on administration that guard against the wiles of the unworthy which may result in wrong to the worthy. We feel that there is room for improvement to the end of better administration, and feel that improvement will come with experience notwithstanding we must conclude the points presented on the law as it now exists.

Applying the facts as presented by the evidence as a major premise and the law as it is as a minor premise, the judgment of the circuit court, in reversing and remanding the award of the commission is reversed.