STATE of Missouri, ex rel., Sergeant Jerry FORTNEY, Respondent,

v.

Chief Larry JOINER, Appellant.

No. WD 42874.

Missouri Court of Appeals, Western District.

Oct. 2, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 1990.

Michael A. Wee, Torrence & Wee, Kansas City, for appellant.

James L. McMullin, Kansas City, for respondent.

Before TURNAGE, P.J., and MANFORD and BERREY, JJ.

TURNAGE, Presiding Judge.

Sergeant Gerald Fortney was suspended for ten days with forfeiture of all pay and allowances from the Kansas City Police force by the Chief of Police. Fortney contested the suspension by filing a petition for a writ of certiorari in the circuit court. The court entered judgment making the writ permanent and set aside the suspension. The Chief appeals and contends the petition for writ was not timely filed, and that the court erred in finding that the suspension was the result of an arbitrary

and capricious act on the part of the Chief. Reversed and remanded.

Fortney was in charge of a special squad of detectives investigating a homicide in August, 1986. Sherman Wells was arrested as a suspect and brought to headquarters to be questioned by Fortney's squad. Wells was questioned by a number of detectives, among them Gibson and Glynn. After Wells had made a confession and a murder charge was filed, Gibson reported to the prosecuting attorney that after Wells had signed a waiver of his rights pursuant to Miranda, Wells had requested an attorney. Gibson stated that he reported this to Fortney, who was in charge of the investigation, and that Fortney had ordered Gibson to continue questioning Wells in spite of his request for an attorney. The prosecuting attorney dropped the murder charge against Wells and the Chief of Police ordered an Internal Affairs Investigation into the matter. The object of the investigation was to resolve the factual question of whether or not Fortney ordered Gibson to violate Wells' rights and whether Wells' rights were violated by Gibson through continued interrogation after Wells requested an attorney.

The Internal Affairs Investigator took a number of statements, among which were statements from Fortney, Gibson and Glynn.[1] Fortney stated that he did not recall anything about the Wells interrogation. Gibson, in his statement, stated that when he began the interrogation of Wells, Wells had already signed a Miranda Waiver. Later Wells told Gibson that he would like to have an attorney present and did not want to talk any more without one. Gibson said he thereupon went out of the room and told Fortney that Wells had requested an attorney and because of that Gibson could not talk with him any more. Gibson said Fortney told him to go back in and get a statement from Wells. Gibson said he

told Fortney that Wells was not kidding and could not be manipulated into thinking that he did not want an attorney. Gibson said Fortney thereupon told Glynn to go in with Gibson to question Wells. Gibson said that when he and Glynn went into the room Wells said he wanted to call his father and asked if he was going to get an attorney. Gibson said they told him he would have to tell them about the murder first. Wells later confessed to Gibson and Glynn and agreed to give a video statement.

Prior to taking the video statement Gibson said Fortney ordered him to simply show Wells the Miranda Waiver Wells had previously signed and ask if that was the waiver he had signed. Gibson said Fortney did not want Gibson to go into detail on camera about the Miranda Waiver form because Fortney did not want to give Wells a chance to back out of making a statement.

Police department procedures for recording a video statement required that the Miranda warning be read on camera to the subject and required the subject to sign the form on camera. Gibson stated that procedure was not followed with Wells because of Fortney's orders.

In his statement to the investigator, Glynn stated that he and Gibson were present when Wells confessed and that Wells never requested an attorney while Glynn was present. He said that Gibson told him that before Glynn became involved in the interrogation Wells had requested an attorney.[2] He said Gibson told him that Gibson had advised Fortney of the request. Glynn said he did not hear the conversation between Fortney and Gibson.

Because of the factual dispute of whether Fortney had ordered Gibson and Glynn to interrogate Wells in the face of Wells' request for an attorney, Fortney, Gibson, and Glynn were all ordered to submit to a

---

1. A number of other statements were taken but none of those persons had any knowledge of the relevant facts, i.e. did Fortney order Gibson to violate Wells' rights and did Gibson do so.

2. A statement was also obtained from Wells by the investigator in which he stated that he had requested an attorney from the beginning to the end of his interrogation.

polygraph examination. The conclusion reached by the examiners was that in answers bearing on the disputed facts, Fortney showed deception, but Gibson and Glynn did not.

The immediate supervisor of Fortney recommended to the Chief that Fortney be suspended for ten days with forfeiture of all pay and allowances. The Chief followed this recommendation.[3]

■ The first issue presented on this appeal is the timeliness of the filing of the petition for a writ of certiorari. The petition was filed about four months after Fortney received his suspension and alleged that his suspension was the result of a noncontested administrative decision and sought review and reversal of that decision. The Chief, among other things, contended that the petition was untimely filed and for that reason the court did not have jurisdiction. The Chief renews his contention in this court that the petition was not timely filed. Primary reliance is placed upon *State ex rel. Day v. County Court of Platte County*, 442 S.W.2d 178 (Mo.App. 1969). In *Day*, this court held that a petition for review of a contested case before an administrative body must be filed within thirty days after the mailing of the notice of the decision pursuant to § 536.110, now RSMo 1986.[4] The court held that the § 536.110 time limit applies because the statutes providing for the agency's action did not contain a time limit for seeking judicial review. The trouble with this contention is that § 536.110 applies to contested cases before administrative agencies. Consequently, *Day*, is distinguishable from this case in light of the fact that the parties agree that the petition for writ of certiorari was filed pursuant to § 536.150 seeking judicial review of an administrative decision in a noncontested case.

The Police Department of Kansas City is governed by § 84.350 to § 84.860. The suspension was imposed by the Chief under the power conferred upon him by § 84.500, and under that section there is no right of appeal or further review available for a suspension of less than fifteen days. Thus, this case meets the requirement of § 536.150 for a noncontested case.

No statute, nor Rule 100 relating to judicial review of administrative decisions, sets forth any time limitation on the filing of a petition under § 536.150 by which review may be had in a noncontested case. Because there is no time limit established for an action seeking review of a noncontested case, the only requirement is that the petition be filed within a reasonable time. No argument is made that Fortney sought review in this case beyond a reasonable time. In that situation the petition for review by way of writ of certiorari was timely filed.

■ When this case came on for hearing, the parties appeared and stipulated that the file developed by the Internal Affairs Investigation consisting of all of the statements taken and other documents would be submitted to the court as the evidence in this case. The court made no finding of whether or not Fortney ordered Gibson to interrogate Wells in violation of the law. The court entered judgment finding that the action of the Chief was an abuse of discretion and was not based upon competent and substantial evidence and was arbitrary and capricious. The contentions of the Chief on this appeal can be consolidated into the question of whether the judgment is erroneous in view of the record before the court.

In *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91 (Mo.App.1982), this court explained the review procedure in noncontested administrative cases. This court pointed out that under § 536.150 the circuit court, in review of a noncontested case, reaches its judgment without reference to the evidence upon which the admin-

---

3. Gibson also received a ten day suspension with forfeiture of all pay and allowances and Glynn received an official reprimand.

4. All sectional references are to RSMo 1986.

istrative decision was made. Rather, the court receives evidence on the merits of the case and based upon the evidence heard by the court finds the facts from which the court determines the validity of the administrative decision. The court owes no deference to the facts found by the administrative agency or the credibility assessed as to any evidence heard by the agency. The circuit court is bound only not to substitute its discretion for the discretion legally vested in the administrative agency or officer. *Id.* at 96. This court in *Phipps* further explained that the court of appeals reviews the judgment of the circuit court and not the actions of the administrative body. *Id.* This court further explained that the deference which the court of appeals accords to the circuit court in these cases rests on the opportunity of that court to assess the credibility of the witnesses that it heard. *Id.*

This court also explained in *Phipps* that the review performed by the circuit court in a noncontested case differs markedly from that in a contested case. *Id.* In a contested case the circuit court reviews the record made before the administrative body and determines whether the decision rests on substantial and competent evidence. In a contested case the review by this court is also a review of the evidence heard by the administrative body to determine if it rests on substantial and competent evidence. In a noncontested case this court reviews the judgment of the circuit court because there is no record from the administrative body. With no record of the evidence on which the administrative decision was made, it is necessary for such record to be made in the circuit court. The circuit court considers the evidence presented to it bearing on the administrative decision and determines for itself the facts. It is from the facts found by the circuit court that the court reaches its decision of whether the administrative decision is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion.

When this case came on for hearing before the circuit court the parties stipulated that the evidence would consist solely of the file assembled in the course of the Internal Affairs Investigation. The court considered the matter on that file and made a number of findings and conclusions of law. The findings consisted largely of a recitation of the procedural history of the case, but did not determine the question of Fortney's action. The conclusions of law found that the decision of the Chief was an abuse of discretion and was not based upon competent and substantial evidence upon the record and was arbitrary and capricious.

It is apparent that the court misconceived its role in this noncontested case. The court mentioned that the Chief's decision was not based upon competent and substantial evidence which in reality is the standard of review in a contested case. The court further stated that the decision was arbitrary and capricious which is the standard applicable to a noncontested case. However, the court did not perform its function to find the facts on the dispute of whether Fortney improperly ordered the interrogation to continue.

■ This lapse, however, is not relevant in this case because the court considered only the written statements and documents contained in the Internal Affairs Investigation file. When the trial court considers only written documents, the usual deference given by this court to the trial court in the resolution of a factual dispute because the ability of the trial court to observe the witnesses and assess their credibility is not applicable and this court may determine the credibility of the evidence to the same extent as the trial court. *Kenilworth Ins. Co. v. Cole*, 587 S.W.2d 93, 98[8] (Mo.App. 1979). The end result in this case is that this court must review the Internal Affairs Investigation file and assess the credibility of the evidence in the same manner as the trial court should have.

■ This court has reviewed the file and the statements of the three persons directly involved in the interrogation of Wells.

Although there is conflict in the statements, this court finds that Fortney did order Gibson and Glynn to interrogate Wells after Wells had requested the presence of an attorney. This conclusion is supported by the action of Gibson in going to the prosecuting attorney and telling him of his action when Gibson knew that he was placing his own career in jeopardy. Further, this court considers the inconsistency of Fortney's statements when he said he had no recollection of the interrogation of Wells and his response during the examination by the polygraph examiner. He was asked by the examiner if Gibson told him that Wells wanted an attorney during the interrogation of Wells and Fortney replied, "No." The next question on the exam was if Fortney ordered Gibson to continue the interrogation of Wells after he had asked for an attorney and Fortney's answer was, "No." The third question inquired if Fortney sent Gibson back to interrogate Wells after Gibson told Fortney that Wells wanted an attorney. Again Fortney answered, "No." This is after he had told the investigator that he had no recollection of the Wells' interrogation. Further, the video statement taken from Wells did not follow department policy because Wells was not read the Miranda Rights nor requested to sign a form waiving those rights on camera. The only explanation for this in the file is that Fortney ordered Gibson not to follow that procedure for fear Wells would change his mind and not make a statement.

■ Although this court does not give great weight to the polygraph examination, the result of that examination was that Fortney was deceptive. Fortney challenges the admissibility of the result of the polygraph examination but this court held in *Campbell v. Personnel Bd. of Kansas City*, 666 S.W.2d 806, 811[1, 2] (Mo.App. 1984), that polygraph examinations may be used in lawful investigations even though the results would not be admissible as evidence in a trial.

After reviewing the documentary evidence which was before the trial court, and assessing the credibility of the witnesses as this court may do in this case, this court concludes that there is substantial evidence to support the conclusion that Fortney did violate Wells' rights by ordering Gibson to interrogate Wells after he exercised his right to request an attorney. Because this court finds the fact to be that Fortney ordered Gibson to violate Wells' rights by continuing the interrogation after Wells requested an attorney, it follows that the Chief's decision is not arbitrary and capricious. A decision is only arbitrary and capricious if it does not rest upon substantial evidence. *Dunnavant v. State Social Security Commission*, 235 Mo.App. 1107, 150 S.W.2d 1103, 1107 (1941). For that reason the decision should not be set aside.

In *Phipps*, this court held that the review by this court of a circuit court judgment in a noncontested case is pursuant to the standard announced in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). *Id.* at 97. This court finds the judgment of the circuit court is not based upon substantial evidence and must therefore be reversed.

The judgment is reversed and this cause is remanded to the circuit court with directions to dismiss the petition for writ of certiorari.

All concur.