[S. F. No. 16306.   In Bank.—July 2, 1940.]

WILLIAM A. SALE et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

Decoto & Hardin, Ezra W. Decoto, Reginald L. Vaughan and Varnum Paul for Petitioners.

Ira H. Rowell, Roderick Cassidy and George E. Howard for Respondents.

Ware and Berol, as *Amici Curiae,* on Behalf of Respondents.

THE COURT.—By this proceeding the petitioners, who are engaged in the transportation business as highway carriers, challenge a decision of the respondent commission the effect of which is to permit a rival transportation company to operate a competing truck line.

In 1927, Misener Motor Drayage Company, a California corporation, acquired certain operative rights for the seasonal transportation of farm produce as a highway common carrier. In the following year the corporation was suspended for fail-

ure to pay its 1927 franchise tax. Although its corporate powers were never revived, the suspended corporation continued to operate until 1935, when the state seized its trucks and equipment. Upon an *ex parte* application made during 1936, the Railroad Commission granted the corporation the right to suspend operations for six months, and following that order the Misener Company entered into an agreement to sell its operative rights to J. J. Leonardini, doing business as the O. K. Trucking Company. Section 50¾ (c) of the Public Utilities Act (Deering's Gen. Laws, Act 6386) prohibits the transfer of operative rights except upon the authorization of the commission, and the contracting parties applied to the commission for authority to make the transfer. Their application set forth the terms of the proposed sale and alleged that the transferee had sufficient equipment and resources to furnish the proposed public service, but did not disclose that the transferor's corporate powers were then under suspension. Without holding a public hearing the commission made its order authorizing the proposed transfer, and thereupon Leonardini began furnishing public transportation over the routes described in the certificates he had acquired.

More than a year later, the petitioners, who compete with Leonardini over part of his truck routes, discovered the circumstances under which he had acquired his operative rights. They filed a complaint against him, claiming that he was operating unlawfully and also petitioned the respondent to reopen the transfer proceedings and revoke its order authorizing the transfer. The respondent reopened the transfer proceedings for the purpose of determining whether its former order should be rescinded, and set the matter for hearing in conjunction with the hearing upon the complaint against Leonardini. At the hearing the facts concerning the suspension of the transferor's corporate powers were presented, but the commission concluded that public convenience and necessity would not be served by prohibiting the transferee from operating over the routes in question. Accordingly it rendered a decision refusing to rescind the order authorizing the transfer. Upon the denial of a rehearing the petitioners brought this proceeding to review the commissioner's decision.

■ The briefs contain a suggestion that the petitioners have no standing to challenge the commission's action because they are merely competitors of Leonardini. The point has

no merit. ██ True, no one has a legally enforceable right at common law to conduct his business free from the competition of others. (*Aetna Ins. Co.* v. *Hyde,* 275 U. S. 440, 447 [48 Sup. Ct. 174, 72 L. Ed. 357]; *Public Service Com.* v. *Great Northern Utilities Co.,* 289 U. S. 130, 134 [53 Sup. Ct. 546, 77 L. Ed. 1080]; *Alabama Power Co.* v. *Ickes,* 302 U. S. 464, 479–484 [58 Sup. Ct. 300, 82 L. Ed. 374].) But this means no more than that the petitioners have no constitutional rights at stake in the orders of which they complain. The legislature may believe that the Public Utilities Act will be more strictly enforced or that questions affecting the public interest will be more thoroughly canvassed and solved if those whose pecuniary interests are affected are permitted to appear before the commission and challenge the rights of their competitors. (See *Federal Communications Com.* v. *Sanders Bros. Radio Station,* (Mar. 25, 1940) 309 U. S. 470 [60 Sup. Ct. 693, 84 L. Ed. 869].)

By section 60 of the Public Utilities Act the right to make complaints for the "violation of any provision of law or of any order or rule of the commission" is conferred upon "any person or corporation", and by section 62 it is provided that "any public utility shall have a right to complain on any of the grounds upon which complaints are allowed to be filed by other parties". That these provisions confer upon competitors the right to complain against or contest the rights of rival operators has never been questioned by the Railroad Commission in its proceedings. Such a right has also frequently been recognized by the courts and cannot now be doubted. (*Haynes* v. *MacFarlane,* 207 Cal. 529 [279 Pac. 436]; *Truck Owners etc. Assn.* v. *Superior Court,* 194 Cal. 146 [228 Pac. 19]; *Western Assn. of R. R.* v. *Railroad Com.,* 173 Cal. 802 [162 Pac. 391, 1 A. L. R. 1455].)

No petition either to rehear or to review the decision authorizing the transfer of operative rights was filed within the time limited in sections 66 and 67 of the Public Utilities Act. From this the respondent argues that it was under no duty to rescind a prior decision which was valid on its face and which had become final. (Public Utilities Act, *supra,* sec. 65.) On the other hand, the petitioners point out that the decision authorizing the transfer was made *ex parte* and without their knowledge, that they proceeded to challenge it as soon as they learned of its existence, and that the respondent

itself recognized the timeliness of their complaint by reopening the prior proceedings and receiving evidence upon the validity of the prior order.

█ It is true that the commission's decisions and orders ordinarily become final and conclusive if not attacked in the manner and within the time provided by law. (Public Utilities Act, *supra*, sec. 65; *Marin Municipal Water Dist.* v. *North Coast W. Co.*, 178 Cal. 324, 327 [173 Pac. 473]; *Coast Truck Line* v. *Asbury Truck Co.*, 218 Cal. 337, 340 [23 Pac. (2d) 513]; *Miller* v. *Railroad Com.*, 9 Cal. (2d) 190, 201 [70 Pac. (2d) 164, 112 A. L. R. 221].) This is not to say, however, that such a decision is *res judicata* in the sense in which that doctrine is applied in the law courts. (*Stratton* v. *Railroad Com.*, 186 Cal. 119, 127 [198 Pac. 1051].) The commission has continuing jurisdiction to rescind, alter or amend its prior orders at any time. (Public Utilities Act, *supra*, sec. 64.) This provision is analogous to sections 5803, 5804 and 5805 of the Labor Code (formerly section 20[d] of the Workmen's Compensation Act) under which the industrial accident commission has been held to have the power to reopen its prior decisions upon a showing of mistake or newly discovered evidence. (*Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 Pac. 195]; *Brunski* v. *Industrial Acc. Com.*, 203 Cal. 761 [265 Pac. 918]; *Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 126 Cal. App. 225 [14 Pac. (2d) 530].) In the proceedings now under review the petitioners presented undisputed facts which were unknown to the respondent at the time of its prior decision and which, they claim, as a matter of law deprived the respondent of the power to make the prior decision. If this contention be correct and the commission erroneously decided a question of law which went to its jurisdiction to act in the transfer proceedings, that determination is subject to review and correction by this court.

█ This brings us to the principal issue in the case. The petitioners contend that because the Misener Company's corporate existence was suspended, it had no power either to transfer its operative rights to Leonardini or to invoke the respondent's jurisdiction to approve the transfer. In consequence, it is said, the entire proceedings, including the respondent's order approving the transfer, were void. The respondent takes the position that its function is limited to

determining questions of public convenience and necessity, and that it had neither the duty nor the right to inquire into the legal capacity of a party to transfer its operative rights.

It must be conceded that under section 3669 (c) of the Political Code a corporation, which has failed to pay its annual gross receipts tax can exercise none of its corporate rights, powers or privileges, and that any contract to sell or transfer property entered into by such a corporation has been held to be void. (*Ransome-Crummey Co.* v. *Superior Court,* 188 Cal. 393 [205 Pac. 446] ; *Boyle* v. *Lakeview Creamery Co.,* 9 Cal. (2d) 16 [68 Pac. (2d) 968] ; *Vogue Creamery Co.* v. *Acme Ice Cream Co.,* 8 Cal. App. (2d) 357 [47 Pac. (2d) 757].) The purpose of the statutory prohibition is to prevent the delinquent corporation from ''enjoying the ordinary privileges of a going concern, in order that some pressure will be brought to bear to force the payment of taxes''. (*Boyle* v. *Lakeview Creamery Co., supra,* p. 19.) We are of the opinion, however, that the transferor's legal incapacity to transfer its operative rights does not affect the validity or regularity of the order now under review.

■ The petitioners' argument is based upon a misconception of the fundamental nature of the California Railroad Commission and the functions which it performs. Created by the Constitution in 1911, the commission was designed to protect the people of the state from the consequences of destructive competition and monopoly in the public service industries. (Cal. Const., art. XII, secs. 20–23; *Pacific Tel. & Tel. Co.* v. *Eshelman,* 166 Cal. 640 [137 Pac. 1119, Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652].) Although it has been termed a ''*quasi*-judicial'' tribunal in some of its functions, its powers and duties go beyond those exercised by the judicial arm of government. (*Stratton* v. *Railroad Com., supra,* p. 126 ; 24 Cal. L. Rev. 330.) A court is a passive forum for adjusting disputes, and has no power either to investigate facts or to initiate proceedings. Litigants themselves largely determine the scope of the inquiry and the data upon which the judicial judgment is based.

The powers and functions of the Railroad Commission are vastly different in character. It is an active instrument of government charged with the duty of supervising and regulating public utility services and rates. (Cal. Const., art. XII, secs. 22, 23.) The Constitution gives the legislature full

authority to implement the commission's powers with legislation germane to public utility regulation, and under this authority the legislature has departed from traditional techniques of judicial procedure. The commission has the right and duty to make its own investigations of fact, to initiate its own proceedings and in a large measure to control the scope and method of its inquiries. (See Public Utilities Act, *supra, passim;* 15 Cal. L. Rev. 445.) All hearings, investigations and proceedings are governed by the provisions of the act and by rules of practice and procedure adopted by the commission. "No informality . . . shall invalidate any order, decision, rule or regulation made . . . " (Public Utilities Act, *supra,* sec. 53.) Hence, unless the act requires the commission to proceed in a certain way, the only limitation upon its procedural powers is its duty to provide a fair hearing to any party whose constitutional rights may be affected by a proposed order.

In the exercise of its authority over highway common carriers, with which we are here particularly concerned, the commission is governed chiefly by section 50¾ of the Public Utilties Act. Under that provision it is required to supervise and regulate such carriers in all matters affecting their relationship with the shipping public. It may grant or deny operative rights with or without a hearing and upon such terms as, "in its judgment, public convenience and necessity require". After a hearing, it may amend, suspend or revoke an existing certificate of public convenience and necessity for good cause shown. No operative right may be transferred except upon the authorization of the commission. When, after a hearing initiated by complaint or by the commission upon its own motion, it is found that a carrier is operating without a certificate or is otherwise violating the act, it may order the offending party to cease and desist. It will be noted that in the exercise of all of these powers public convenience and necessity is the criterion of administrative judgment.

With this background before us, we turn to the petitioners' contentions. First, it is said that because the corporate powers of the Misener Company were suspended, it had no capacity to invoke the commission's jurisdiction to approve the transfer. The argument thus made derives from the rule of judicial procedure that a court acquires no jurisdiction

over a controversy unless a party with capacity to act appears before it and initiates the proceedings. The fallacy of the petitioners' position lies in their assumption that this legal rule applies with equal validity to administrative proceedings. The Supreme Court of the United States has recently declared that the divergence of function between the judicial and the administrative process "precludes wholesale transplantation of the rules of procedure, trial and review, which have evolved from the history and experience of courts". (*Federal Communications Com.* v. *Pottsville Broadcasting Co.,* (Jan. 29, 1940) 309 U. S. 134 [60 Sup. Ct. 437, 84 L. Ed. 656].) This observation has apt illustration here. The legal rule does not apply because the Railroad Commission, unlike a court, may act *sua sponte* and is not dependent upon the appearance of a party to "invoke" its jurisdiction. Nor does the Public Utilities Act require the commission to follow any particular procedural steps in authorizing a transfer of operative rights. It is true that under its rule-making power the commission has provided that an application for such authority "be made by all the parties to the proposed transaction". (Rule 24, Rules of Procedure of the Railroad Commission.) But, assuming that the transferor's legal incapacity might have prevented compliance with this rule, that fact does not go to the jurisdiction of the commission to entertain the proceeding. Its powers of surveillance and supervision over all public utility matters are inherent.

Petitioners rely upon *Hanlon* v. *Eshelman,* 169 Cal. 200 [146 Pac. 656], in which this court declared that the provision requiring the commission's consent to a sale of operative rights "implies that there must be an owner ready to sell and seeking authority so to do before the commission is called upon to act". However, when read in its context, this statement means no more than that the commission has no occasion to give its consent where there is no transferor and transferee before it willing to transfer and receive the operative rights. Once it is realized that the commission could, upon Leonardini's or its own motion, have entertained proceedings to grant him the operative rights which the Misener Company had no legal right to exercise, its jurisdiction to entertain the transfer proceedings becomes obvious.

The petitioners' next contention goes to the substantive power of the commission to authorize the transfer in view of

the Misener Company's legal incapacity to enter into such a transaction. It has been noted that any attempt by a suspended corporation to transfer its property is void under section 3669 (c) of the Political Code. Yet we are bound to assume that public convenience and necessity require continuance of the service which the present operative rights entail and also that Leonardini has the facilities and financial ability to furnish the needed public service. These assumptions are implicit in the commission's original grant of the operative rights and in its order authorizing their transfer.

The commission insists that under the principles established in *Hanlon* v. *Eshelman, supra,* it could concern itself solely with the question of public convenience and necessity and had no authority to consider the legal status of the parties before it. In that case the owner of a municipal water system first contracted to sell the system to Hanlon and then refused to complete the transaction. Hanlon unsuccessfully petitioned the Railroad Commission to approve the transfer, claiming that he had a legal right to a conveyance of the properties. He then sought a writ of mandate to compel the commission to act upon his application, but this court denied the writ, holding that the commission was under no duty to pass upon a disputed legal question raised by the parties before it. Concerning the proper sphere of the commission's authority the court said: ''The commission's power is to be exercised for the protection of the rights of the public interested in the service, and to that end alone. . . . All that the commission is concerned with, therefore, is whether a proposed transfer will be injurious to the rights of the public. If not, the owner may be authorized to make the transfer. With the rights of an intending purchaser the commission has nothing to do. Nor has it power to determine whether a valid contract of sale exists, or whether either party has a legal claim against the other under such contract. These are questions for the courts, and not for the railroad commission, which is merely authorized to prevent an owner of a public utility from disposing of it where such disposition would not safeguard the interests of the public.''

It may be conceded that the principles expressed in the Hanlon case do not provide a universal test for determining the commission's authority to pass upon questions of law. Because the commission cannot decide questions concerning

the legal rights and duties of private parties *inter se* does not mean that it is powerless to decide all legal questions or that it may, in its own discretion, disregard established rules of law. Cases may arise in which the legal status of a party before it would be an operative fact which the commission could not disregard. Thus, if a proposed transferee lacked the legal capacity to do business, such fact would directly affect its ability to furnish the service which it proposed to assume.

Moreover, the commission is not entitled wholly to disregard other laws representing the legislative policy of the state, even though the enforcement of such policy is outside the proper scope of its functions. In the present case, if the commission had been apprised of the transferor's incapacity when the transfer proceedings were pending, it would have been faced with just such a problem. A duty, on the one hand, to insure adequate transportation facilities for the shipping public would have prescribed a decision which would permit the transferee to assume the operative rights. But a due regard for the state's taxing power and the laws by which that power is made effective would have weighed against giving consent to the transfer. To be sure, the commission was never intended to be an instrument for the vindication of the taxing power, but it could not flout the tax laws or collude in their evasion. Possibly the dilemma could only have been solved by revoking the transferor's rights and granting them anew to the transferee.

It is plain, however, that the commission was faced with no such dilemma when called upon to make the decision under review. The transfer had been completed and more than a year had gone by. To have rescinded the prior order at that time assuredly would not have satisfied the purpose for which section 3669 (c) of the Political Code was enacted. And such a decision would have effectually thwarted the constitutional and legislative duty of the commission to safeguard the interests of the public with respect to the need for adequate transportation facilities. Under the circumstances, it is clear that the commission regularly pursued its authority under the law.

The order under review is affirmed.

Carter, J., dissented from the foregoing decision, and was of the opinion that the writ of review should be granted and the order of the railroad commission annulled.