## Application of TRANSPORT, INC. OF SOUTH DAKOTA

### (64 N. W.2d 313)

(File No. 9392. Opinion filed May 15, 1954)

**Boyce, Warren, Murphy & McDowell,** Sioux Falls, for Appellant.

**Stordahl, May & Boe,** Sioux Falls, for Respondent.

**Herman L. Bode,** Pierre, **Ralph A. Dunham,** Atty. Gen., for Public Utilities Commission.

ROBERTS, J. This is an appeal from a judgment of the Circuit Court of Minnehaha County affirming an order of the Public Utilities Commission.

The order of November 6, 1952, approved a request of Transport, Inc. of South Dakota, for transfer to it of three motor carrier permits (Nos. 6336, 6337 and 6456) issued to Transport Service, Inc. and a motor carrier permit (No. 7254) issued to Transport, Inc. of Moorhead, Minnesota. The three class B motor carrier permits issued to Transport Service, Inc. authorized it to transport petroleum products from Sioux Falls and Yankton to all points in the state east of the Missouri River and from Sioux Falls to a limited area west of the Missouri River adjacent to U. S. Highways 16 and 18. The class B carrier permit No. 7254 authorized the holder to transport petroleum products to all points in the state east of the Missouri River and north of U. S. Highway 14. The order authorizing the transfers contains the following restriction: "That Transport Inc. of South Dakota desist

and abstain from transporting petroleum products loaded or originating at Watertown, South Dakota (pipeline area) to any point south of U. S. Highway 14 in South Dakota, or any point west of the Missouri River in South Dakota."

Dan S. Dugan, doing business as a motor carrier under the name of Dugan Oil and Transport Company, resisted the granting of the applications.

A petition for rehearing before the Commission was denied and as we have indicated the judgment of the Circuit Court on appeal affirmed the order of the Commission. Protestant and appellant insists that the order approving the transfers should be reversed because (1) there is no finding of convenience and necessity, and (2) the evidence is insufficient to support the findings of the Commission that the transfers are consistent with and will promote the public interest and that transferee corporation is able, ready and willing to assume the status and obligations of a motor carrier.

Statutory directions as applied to transfers of permits or certificates held by motor carriers are embodied in SDC Supp. 44.0412: "Any right, privilege, permit, or certificate held, owned or obtained by any motor carrier may be sold, assigned, leased, transferred, and inherited as other property only by the authorization of the Commission. Provided that the sale, assignment, lease, transfer or acquisition through operation of law, of any right, privilege, permit or certificate shall not be approved unless, the Commission shall find **that such sale, assignment, lease, transfer or acquisition is consistent with and will promote the public interest.**"

The establishment of a class B motor carrier service or the extension of an existing service is governed by SDC Supp. 44.0410: "* * * If after hearing upon application for a certificate or permit, the Commission shall find, upon the evidence, **that public convenience and necessity require the authorization of the service proposed, or any part thereof as the Commission shall determine,** a certificate or permit therefor shall be issued. Such certificate or permit shall authorize the applicant to operate as a motor carrier from the date thereof until the first day of January next following. In de-

termining whether or not a certificate or permit should be issued, the Commission shall give reasonable consideration to the transportation service being furnished or that will be furnished by any railroad, or other existing transportation agency, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout twelve months of the year and the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected by such proposed transportation service or that might be affected thereby."

 It appears from these statutory provisions and a reading of the entire act that the legislature was primarily concerned with the creation and maintenance of adequate motor transportation service to the public. What is required for adequate, economical, efficient and necessary service and in furtherance of the public interest is a matter for the determination of the Commission. Application of Dakota Transportation, Inc., 67 S.D. 221, 291 N.W. 589; Application of Megan, 69 S.D. 1, 5 N.W.2d 729. To institute a new service, an applicant has the burden of making an affirmative showing that public convenience and necessity require the proposed service and the ultimate finding by the Commission of public convenience and necessity must be based upon the statutory criteria and sufficient evidence to support it. As stated in Application of Megan, supra, the term "public convenience and necessity" has taken on a rather definite meaning and connotes a determination of public interest based on a weighing of factors having relation to an adequate and efficient transportation system. In Application of Svoboda, 74 S.D. 444, 54 N.W.2d 325, the Commission had before it an application requesting approval of a transfer and seeking an amendment of the original certificate. There was no controversy regarding the transfer. The essential issue presented was whether the Commission was justified in granting authority to operate in territory not included in the original certificate. That required proof of public convenience and necessity.

██ ██ The Commission cannot approve a transfer un-

less the same is consistent with and will promote the public interest. This is the standard fixed by Section 44.0412, supra. Under an amendment of this section by Chapter 174, Laws 1939, the Commission after hearing could authorize a transfer. The words "after hearing" were deleted from this section by Chapter 190, Laws 1941. The matter of the public need for the services was determined when the original certificates herein were issued. We think it would be contrary to the spirit and intent of the statute to require a hearing in each instance and impose the burden upon the transferee to show the existence of public convenience and necessity as a prerequisite to the authorization of a transfer. Indianapolis & Southern Motor Express, Inc. v. Public Service Commission, Ind.Sup., 112 N.E.2d 864; Ramsey v. Public Utilities Commission, 115 Ohio St. 394, 154 N.E. 730; Sale v. Railroad Comission, 15 Cal.2d 612, 104 P.2d 38; University City Transfer Co. v. Florida Railroad Commission, 124 Fla. 308, 168 So. 413. That determination as above stated was had when the original certificates were issued and, in the absence of proof to the contrary, the assumption is warranted that public convenience and necessity require continuation of the services previously authorized. In Hostetter v. Pennsylvania Public Utility Commission, 160 Pa. Super. Ct. 94, 49 A.2d 862, 864, commenting upon an analogous situation, the court said: "It is only an application of a familiar and elementary common law principle, the so-called presumption of continuance doctrine, by which a condition of a continuous nature once established may be assumed to continue until the contrary is shown."

Protestant contends that applicant was without corporate existence and could not invoke the authority of the Commission to approve the transfers. It is admitted that the corporation had not been fully formed. We think that the record contains ample evidence to sustain the action of the Commission. The evidence was that the incorporators and persons interested in the venture are experienced in the field of motor carrier transportation, that the corporation will have adequate equipment to continue the authorized services and that it will have adequate finances. Protestant submitted no testimony and made no direct attack on the fit-

ness or financial ability of the incorporators to complete the incorporation and to perform the services authorized. There is no requirement of statute that the corporation be in existence at the time an application is heard. See Central Freight Lines v. Sadler, Tex.Civ.App., 147 S.W.2d 1102. The Commission under the provisions of Section 44.0412, supra, was concerned with protecting the public interest and to this end it determined the fitness and ability of the proposed transferee to render the authorized services.

Judgment appealed from is affirmed.
All the Judges concur.