CHURCHILL TRUCK LINES, INC., Plaintiff-Appellant,

v.

TRANSPORTATION REGULATION BOARD OF the IOWA DEPARTMENT OF TRANSPORTATION (Successor in Interest to the Iowa State Commerce Commission), Defendant-Appellee,

Arledge Transfer, Inc., Intervenor In Support of Transportation Regulation Board.

No. 2–61565.

Supreme Court of Iowa.

Jan. 24, 1979.

296

Larry D. Knox, of Austin, Myers, Peterson & Gaudineer, Des Moines, for appellant.

T. Scott Bannister, of Iowa Dept. of Transp., Transp. Regulation Board, Des Moines, for appellee.

Thomas E. Leahy, Jr., of Grefe & Sidney, Des Moines, for intervenor.

Considered by REES, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

LARSON, Justice.

This appeal arises out of competing claims by Arledge Transfer, Inc. and Churchill Truck Lines, Inc. to obtain certain operating rights presently held by BN Transport, Inc. The Transportation Regulation Board (then Iowa State Commerce Commission) approved the joint application of BN and Arledge for transfer of these rights to Arledge and denied Churchill's unilateral application to obtain them. Churchill sought judicial review in district court, and the order of the board was affirmed. Arledge intervened and joined with appellee board. Upon appeal of that judgment, we affirm the trial court.

For several years prior to February 11, 1974, BN Transport, Inc. was the holder of a certificate of convenience and necessity granted under chapter 325, The Code, and operated among several cities in Iowa. This operation was unprofitable, and on that date it joined with Arledge Transfer, Inc. in filing with the board a combined application for approval of a contract for transfer of the certificate to Arledge under the procedure of § 325.25, The Code (1975). Churchill filed a unilateral application for

transfer of the certificate to it. Both applications were considered at the same board hearing.

Section 325.25 provided that no certificate of convenience and necessity could be sold, transferred, leased or assigned until the carrier had operated under it continuously for 90 days or more. It further provided that:

> [N]or shall any contract or agreement with reference to or affecting any such certificate be made except with the written approval of the commission. Nor shall any person be permitted to take over any such certificate unless he or it shall possess all the qualifications of and meet all the requirements and assume all the obligations imposed upon an original applicant.

Churchill contends the proceedings of the board in approving the transfer and denying Churchill's unilateral application were defective in two respects: The board lacked jurisdiction to proceed with the transfer application of BN and Arledge because it had not published notice of the proceedings; and the actions of the board were illegal because they were unreasonable, arbitrary, and capricious and were not supported by sufficient evidence.

## I. Jurisdiction of the board.

Section 325.25, The Code (1975), includes no express requirement for notice of a hearing on a proposed transfer. Section 325.13, however, did require published notice upon the filing of an original application for a certificate of convenience and necessity. That section provided:

> Upon the filing of the application, the commission shall fix a date for hearing thereon and cause a notice addressed to the citizens of each county through or in which the proposed service will be rendered, to be published in some newspaper of general circulation in each county, once each week for two consecutive weeks.

Churchill acknowledges this section applies to first-time permit issuances and is not by its own terms applicable to transfers of certificates. It contends, however, that the language of § 325.25 requiring that a proposed transferee "possess all the qualifications of and meet all the requirements and assume all the obligations imposed upon an original applicant" imposes the notice requirements of a new application upon these proceedings for a transfer of the certificate.

No notice of the proposed transfer was published, but a "courtesy" notice of the pending joint application was sent by the board to all certified carriers in Iowa. This "courtesy" notice was sent to advise the carriers who might have "interlining" or tariff dealings with the present certificate holder. Churchill received such notice, filed a written resistance to the proposal, and appeared in opposition to it at the hearing. Churchill concedes it was not impaired in its ability to respond to the proposal and that it was not prejudiced in any manner by the failure to provide published notice; it contends only that the board was deprived of jurisdiction.

 The statutes, when read together, show that publication of notice is not required by the transfer section. Such notice for an original application must be provided by the board—it is not a "requirement" of the applicant. Although the practice has been for the applying carrier to provide the money and mechanics for such publication, the duty is that of the board under the statute to "cause" a publication; the applicant's involvement is mechanical only and partially a result of a desire to place on it the financial responsibility for publication costs. It is done pursuant to a board order for notice.

The board has followed the practice of processing transfer applications without publication of notice as here urged by Churchill. The transfer section has been in existence since 1924 in substantially the same form as it was at the time of the board hearing on this proposal. The board has never interpreted the statute to require notice of a proposed transfer. Interpretations by an agency charged with implemen-

tation of a statute, particularly over a long period of time, and without legislative intervention, is evidence of compatibility of that agency's interpretation with legislative intent. *See Iowa Nat. Ind. Loan Co. v. Iowa State Dept. Rev.*, 224 N.W.2d 437, 440 (Iowa 1974); section 4.6(6), The Code. Another matter which may be considered in construing the statute is the consequences of a particular construction. Section 4.6(5), The Code. To give the transfer statute the interpretation urged by Churchill, that all duties and responsibilities of a proposed transferee and the procedures under § 325.-25, would be identical to those of an applicant for issuance of a new certificate under § 325.7 and 325.13, would make the transfer section meaningless; every proposed transfer would be, in effect, a cancellation of the existing certificate and issuance of a new one, with all of the additional matters to be considered regarding the need for the proposed service. This does not appear to be the intent of the legislature. The matter of "necessity" for the service had been previously determined on the original issuance. Public notice would be required to make that determination; it would not be required to make a determination of "fitness" of a transferee. Consideration of a proposed transferee could reasonably include financial ability under § 325.8, The Code; safety compliances under § 325.18; payment of hearing expenses under § 325.19; and liability insurance coverage under § 325.26. These would bear on the "qualifications, requirements and obligations" of the carrier; whether the board had caused publication of notice would not bear on any of them.

If all the requirements and procedures of a new application, including notice, were to be applicable in a transfer application, the legislature could easily have said so. It did not, and we conclude this was not the intent.

This was also the conclusion of the South Dakota supreme court in *Application of Transport, Inc.*, 75 S.D. 340, 64 N.W.2d 313, 315 (1954). In considering whether the "convenience and necessity" prerequisites, and the hearing requirements of a new application were also to be required on transfer of an existing certificate, the court said:

> The matter of the public need for the services was determined when the original certificates herein were issued. We think it would be contrary to the spirit and intent of the statute to require a hearing in each instance and impose the burden upon the transferee to show the existence of public convenience and necessity as a prerequisite to the authorization of a transfer. . . . That determination as above stated was had when the original certificates were issued and, in the absence of proof to the contrary, the assumption is warranted that public convenience and necessity require continuation of the services previously authorized.

We hold that published notice under § 325.13, The Code, applicable to new applications, is not a prerequisite for jurisdiction of the board to consider a proposed transfer under § 325.25, and that the board had jurisdiction in this matter.

## II. Legality of the board's action.

Appellant contends that even if the board had jurisdiction to proceed in this matter, its action was "arbitrary, unreasonable, capricious, contrary to law and not supported by the evidence," and that the trial court "erred when it affirmed it."

Churchill argues that the board acted for the benefit of the carriers and not for the public as it should have; that by approving this proposed transfer without public notice, the needs of the public were ignored. As pointed out in the disposition of division I, however, the convenience and necessity determination, which had resulted in the original issuance of the certificate, was the stage in which the public had an interest and as to which it was entitled to statutory notice. That need, having been previously determined, is not the issue in these proceedings, which are to determine fitness and qualifications of the proposed transferee.

Churchill also claims the public interest was disregarded, because by approving the proposed contract of transfer the board, in effect, put its stamp of approval on an illegal contract. The basis for this claim is that the law provides:

Nor shall any contract or agreement with reference to or affecting any such certificate be made except with the written approval of the [board]. Section 325.25, The Code.

Churchill says BN and Arledge entered into their agreement without such approval and therefore it is illegal and unenforceable. Upon examination, however, the contract for transfer was expressly conditioned upon board approval. Without any agreement by a proposed transferor and transferee, how could there ever be a matter to present to the board for approval? We find no merit in this claim by Churchill.

Two related sub-issues are raised by Churchill, which will be discussed together. These concern its unilateral application to take over BN's certificate (considered simultaneously with the joint application for transfer of BN and Arledge), and the issue of whether BN would have transferred its rights to Churchill under any circumstances.

Churchill contends the board did not give adequate consideration to its unilateral application for the transfer of the certificate to it. The board contends it did; and that BN would not transfer its certificate to Churchill, under any circumstances, thus making any approval of Churchill's unilateral application purely academic. BN's evidence at the hearing disclosed a strong reluctance to transfer the rights to Churchill, even if approved by the board, apparently because of future competition problems. Churchill contends that BN might still transfer the certificate to it if Arledge's attempts are unsuccessful.

We do not find it necessary to decide whether "adequate" consideration was given the Churchill application by the board, nor whether there is sufficient likelihood of a BN transfer to it. In the context of these proceedings, the unilateral application was surplusage; the issues to be determined were the qualifications and fitness of the transferee under a proposed transfer arrangement. It is clear from reading the statute that it envisioned proposed transfers under bilateral or multilateral arrangements—not unilateral acquisitions by carriers in a non-contractual relationship.

There is no merit to Churchill's contention that the board erred in failing to give its unilateral application due consideration. It gave the application more consideration than the statute requires.

In addition to the specific bases of illegality of the board's actions as discussed above, Churchill contends they were "arbitrary, unreasonable, capricious, contrary to law, and not supported by the evidence."

The test to be applied in judicial review of the commission's actions is stated in *Davenport Water Co. v. Iowa State Commerce Comm.*, 190 N.W.2d 583, 591–2 (1971), where we said:

[The Commerce] Commission is the finder of fact, it being for us to ultimately determine, (1) issues of law, (2) whether Commission acted unreasonably, arbitrarily, capriciously, in violation of applicable constitutional standards, or in excess of statutory authority, and (3) whether its findings are supported by substantial evidence of record. . . . Our limited factual review is as it should be, since Commission presumably has at its disposal the facilities and expertise with which to appropriately resolve detailed and complicated fact questions. This means we can intercede only when Commission is clearly shown to have acted unconstitutionally, in violation of statutory mandate, or absent substantial support in the record.

The "issues of law" have been discussed previously. The terms "arbitrary," and "capricious," when applied to test the propriety of agency action are practically synonymous and mean that the action complained of was without regard to established rules or standards. *Paul v. Board of Zoning App.*, 142 Conn. 40, 44, 110 A.2d 619,

621 (1955); or without consideration of the facts of the case. *Powers v. Fisher Controls Co., Inc.*, 246 N.W.2d 279, 282 (Iowa 1976). *See also Tri-County Elec. Co-op, Inc. v. Elkin*, 224 N.W.2d 785, 794 (N.D.1974). "Unreasonable" has been said to mean action in the face of evidence as to which there is no room for difference of opinion among reasonable minds. *Thurman v. Meridian Mut. Ins. Co.*, 345 S.W.2d 635, 639 (Ct.App.Ky.1961), or not based on substantial evidence. *Howlett v. State Social Security Comm.*, 347 Mo. 784, 789, 149 S.W.2d 806, 809 (1941).

The scope of review of an administrative action is set out in *City of Davenport v. Public Emp. Rel. Bd.*, 264 N.W.2d 307, 311–2 (Iowa 1978). Under the rule there stated, we must determine whether the action of the board is supported by substantial evidence in the record made before it, when that record is viewed as a whole.

■ The board heard several days of testimony and oral argument. It drew upon its own expertise and this evidence in finding Arledge, the proposed transferee, to be "qualified" under § 325.25, The Code. The board found Arledge was a carrier with a long history of satisfactory performance, in strong financial condition, and with adequate equipment to handle BN's business. In fact, Churchill does not even claim Arledge is not qualified; it merely claims it is less qualified than Churchill.

We conclude that the record here does furnish substantial support for the board's action, and that it was not arbitrary, capricious or unreasonable as defined above.

We find no error in the proceedings and therefore affirm the judgment of the trial court.

AFFIRMED.