Edna MOWREY, Donna Martin, and
Helen Rodish,
Petitioners–Appellants,

v.

IOWA CIVIL RIGHTS COMMISSION,
Respondent–Appellee,

and

Tension Envelope Corporation,
Intervenor–Appellee.

No. 87–331.

Court of Appeals of Iowa.

March 9, 1988.

Thomas Mann, Jr. of Mann & Mann, Des Moines, for petitioners-appellants.

Thomas J. Miller, Atty. Gen., and Rick Autry, Asst. Atty. Gen., for respondent-appellee.

Albert J. Harvey and Donald Gonnerman of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for intervenor-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

The petitioners appeal the decision of the district court affirming the decision of the Iowa Civil Rights Commission dismissing the petitioners' claims of discrimination in employment on the basis of sex and physical disability. We affirm.

Petitioners are all women who are machine operators for intervenor Tension Envelope Corporation. Edna Mowrey has tendonitis and carpal tunnel syndrome. She cannot operate the 527 machine at work. Tension placed Edna in a restricted operator position. Restricted operators are paid less than other employees. Donna Martin has tendonitis and she refused to operate the 527 machine. Donna became a restricted operator and was given reduced pay. Helen Rodish was involved in a car accident. She worked for Tension until May 12, 1980, although she was not terminated until June 1, 1982; her name was then removed from the seniority list.

The petitioners filed claims with the Iowa Civil Rights Commission alleging discrimination in employment on the basis of sex and physical disability. A staff investigator recommended that probable cause of discrimination be found, but a hearing officer found there was no probable cause and dismissed the case. The district court affirmed the decision of the Commission. Petitioners appeal.

I. The petitioners allege the district court erred in affirming an agency decision which was arbitrary, capricious, and not supported by substantial evidence in the record.

Iowa Code section 17A.19(8) provides:

8. The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

a. In violation of constitutional or statutory provisions;

b. In excess of the statutory authority of the agency;

c. In violation of an agency rule;

d. Made upon unlawful procedure;

e. Affected by other error of law;

f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; or

g. Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Petitioners concede the probable cause determination made by the Commission was not a contested case decision. *Oliver v. Teleprompter Corp.,* 299 N.W.2d 683, 686 (Iowa 1980). Therefore, the "lack of substantial evidence" ground set forth in section 17A.19(8)(f) is not applicable in this case. Petitioners assert that the substantial evidence test still applies; they contend this ground is available under section 17A.19(8)(g) and argue that "arbitrary" and "capricious" may mean that a decision is not based on substantial evidence. We do not agree. If we were to adopt petitioners' reasoning, the purpose of section 17A.19(8)(f) would be defeated and that section would, in effect, become a nullity.

Even though we find we cannot use the "substantial evidence" test because this is an uncontested case decision, we apply the other standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Teleconnect Co. v. Iowa State Commerce Commission,* 404 N.W.2d 158, 162 (Iowa 1987). Our scope of review is limited to the correction of errors at law.

Iowa R.App.P. 4; Iowa Code § 17A.20; *Cerro Gordo County v. Public Employ. Rel. Bd.*, 395 N.W.2d 672, 675 (Iowa App. 1986).

Petitioners also argue that the agency's decision was unreasonable, arbitrary, and capricious, characterized by an abuse of discretion and ignored relevant facts. The terms "arbitrary" and "capricious" are practically synonymous and mean that the action complained of was without regard to established rules or standards or without consideration of the facts of the case. *Churchill Truck Lines v. Transp. Reg. Bd., Etc.*, 274 N.W.2d 295, 299–300 (Iowa 1979). "Unreasonable" refers to action in which the evidence is such that reasonable minds may not differ in their opinions. *Id.* at 300. "Abuse of discretion" is synonymous with unreasonableness, is premised on lack of rationality, and focuses on whether the agency has made a decision against reason and the evidence. *Frank v. Iowa Dept. of Transp.*, 386 N.W.2d 86, 87 (Iowa 1986).

■ A plaintiff in a civil rights action has the burden of establishing a prima facie case of discrimination. *Iowa Civil Rights Comm. v. Woodbury County Community Action Agency*, 304 N.W.2d 443, 448 (Iowa App.1981). Discrimination may be shown by either disparate impact or disparate treatment. *Id.* To establish a prima facie case of disparate impact discrimination, a claimant must demonstrate that a particular practice in actuality operates to exclude protected class members, or a facially neutral employment practice falls more harshly on one protected class group than non-protected class groups. *Id.* Proof of discriminatory intent is not necessary under a disparate impact theory. *Id.* at 449. After establishing a prima facie case, the burden shifts to the respondent to articulate a legitimate reason for the action taken. *Id.* A claim is shown where supervisors subjectively make employment decisions without definite standards for review and a pattern clearly disfavoring protected class members is established. *Id.*

■ Disparate treatment occurs where members of a minority or sex group have been denied the same employment, promotion, or transfer opportunities as have been made available to other employees. 240 Iowa Admin.Code 2.10 (now 161 Iowa Admin.Code 8.3). Plaintiff carries the burden of establishing a prima facie case by showing: (1) (s)he belongs to a minority; (2) that (s)he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Woodbury County Community Action Agency*, 304 N.W.2d at 448. Proof of discrimination motive is required. *Id.* The claimant may prevail by showing that the practice is being used as a pretext for discrimination. *Woodbury County v. Iowa Civil Rights Commission*, 335 N.W.2d 161, 166 (Iowa 1983). Evidence of statistical disparities and past discriminatory treatment along with the utilization of a subjective decision-making process is relevant to showing pretext in a disparate treatment case. *Talley v. United States Postal Service*, 720 F.2d 505, 507–08 (8th Cir.1983).

A. Petitioners claim there was sex discrimination in wage payments because operators were primarily women and paid less than the male-occupied adjuster positions. They also claim women were "channeled" into the lower-paying operator positions.

■ The record shows that the duties for the positions of operators and adjusters are dissimilar. Adjusters are required to take mechanical or dexterity tests; operators take a clerical test. There was evidence that the adjusters' positions tend to be more difficult; adjusters are required to repair the machines as well as operate them. Tension at one time promoted a female operator to adjuster; although she passed the test, she was disqualified because she was unable to perform the heavy lifting. Men have been operators in the past. Testimony revealed that it was not more difficult for women to be promoted. Job openings are posted at the company, although it appears from the record few

women apply. There is no evidence that petitioners applied for the adjuster position or that they could perform the work of an adjuster. In addition, many applicants are referred to the company by Job Service, thus decreasing the channelling opportunity. Applying the principles of law previously stated to the foregoing facts in this case relative to petitioners' claims of sex discrimination in wage payments and job channelling, we find that the Commission's finding of no probable cause should be affirmed, no error of law having occurred and the decision not being unreasonable, arbitrary, and capricious nor characterized by an abuse of discretion.

*B.* Petitioners also allege there was sexual harassment and differential treatment based on sex, although they do not refer us to any specific incidents in the record as to what, when, where, or to whom an incident happened. We cannot analyze a sexual harassment claim without more definite details. We do take note, however, in petitioners' statement of facts in their brief that they allege the harassment included yelling at female employees, requiring female employees to clean up after male employees, threatening job security of the female employees, requesting sexual favors, and supervising more closely the female employees.

29 C.F.R. section 1604.11 sets forth the guidelines of the Equal Employment Opportunity Commission in order to establish a sex harassment claim:

(a) Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Petitioners make no contention that the alleged incidents showed any relation to employment decisions or job performance. Thus, we find no merit in this claim and affirm the Commission's decision in this regard.

*C.* Petitioners claim that there was both sex and disability discrimination as a result of the creation of the restricted operator job classification, which paid less. They claim men who were injured were put on light duty and did not suffer a reduction in pay. They allege that a disabled person should not be paid less just because of his/her disability.

We do not find that the restricted operator position was created because of sex. The position was created after the 527 machine came into existence in an effort to accommodate fairly those persons unable to operate all machines and to allow the employees to continue to work when they would otherwise fail to meet the job qualifications due to physical limitations. Martin and Mowrey were placed in this category based on the certification of their disability (tendonitis and carpal tunnel syndrome) by their physicians. There is no restricted position elsewhere in the company because the problem has not arisen to provide for a restricted position in another classification of job.

Iowa Code section 601A.2(11) sets out the definition of disability as follows:

"Disability" means the physical or mental condition of a person which constitutes a substantial handicap. In reference to employment, under this chapter, "disability" also means the physical or mental condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation.

An employee must be able to perform the job in a "reasonably competent and satisfactory manner" for the statute to apply. *Foods, Inc. v. Iowa Civil Rights Commission,* 318 N.W.2d 162, 167 (Iowa 1982). An impairment is substantial if it substantially interferes with the person's ability to care for one's self, perform manual tasks, walk, see, hear, speak, breathe, learn, and work.

*Sommers v. Iowa Civil Rights Commission,* 337 N.W.2d 470, 476 (Iowa 1983).

■ The record shows that petitioners' disabilities were directly related to their inability to perform their jobs; thus, they are not covered by this statute. In addition, we do not find petitioners' disabilities to be classified as substantial handicaps. In any event, we find the restricted operator position met the reasonable accommodation requirements arising from a protected disability as set forth in *Cerro Gordo County Care Facility v. Iowa Civil Rights Commission,* 401 N.W.2d 192, 196–97 (Iowa 1987). The employees were not terminated based on sex or disability bias motivation; instead, Tension made an effort to accommodate the employees and keep them on the payroll. While it is true some employees were placed on "light duty" assignments without a reduction in pay, these employees constituted both males and females, including Petitioner Martin at one time. A special wage grade classification was implemented for the restricted operator position, which resulted in a decrease of 35 not find that this reduction in pay is a violation of 240 Iowa Administrative Code 6.4(1) or 6.4(2) (now 161 Iowa Admin.Code 8.29(1) and (2)). These particular sections provide:

**240–6.4(601A) Wages and benefits.**

6.4(1) While employers may reengineer the conditions of work for the disabled person, the salary paid to said person shall be no lower than the lowest listed on the applicable wage grade schedule.

6.4(2) The wage schedule must be unrelated to the existence of physical or mental disabilities.

The wage scale implemented for the restricted operator position was as a result of the reduction in the amount of work performed, not because it was solely based on the employee's disability. Since all of the duties of an operator could not be performed, a slight reduction in wages was implemented when creating the restricted operator position. 240 Iowa Administra-

tive Code 6.2(6) (now 161 Iowa Admin.Code 8.27(6)) provides in pertinent part:

Reasonable accommodation. An employer shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

a. Reasonable accommodation may include:

\* \* \* \* \* \*

(2) Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions.

240 Iowa Administrative Code 6.3 (now 161 Iowa Admin.Code 8.28) provides:

**Disabilities arising during employment.** When an individual becomes disabled, from whatever cause, during a term of employment, the employer shall make every reasonable effort to continue the individual in the same position or to retain and reassign the employee and to assist in his or her rehabilitation. No terms in this section shall be construed to mean that the employer must erect a training and skills center.

Based on the foregoing provisions, we find the company reasonably accommodated petitioners by providing the restricted operator position. The fact the new position is at a reduced rate of pay we do not find to be a violation nor illegal. In addition, we note had the company modified the operator position by making it part-time pursuant to rule 6.2(6)(a)(2), this would also have reduced the employee's pay.

■ Petitioner Rodish claims that when she returned to work after her car accident, she was required to do heavy lifting, rather than being put on "light duty" and as a result suffered an injury. Her last day of work was May 12, 1980, and she was officially terminated with the company on June 1, 1982. She asserts the company should have left her on the seniority list

even though the collective bargaining agreement provided the following:

> Article XII—Leave of Absence. In the event an employee is off work because of occupational injury or disease, he or she shall be carried on the seniority list as a regular employee for the duration of his or her absence until he or she has recovered. In the event an employee is off work due to a non-occupational accident or disease, he or shall be carried on the seniority list as a regular employee for the duration of such accident or disease, not to exceed twenty-four (24) months.
>
> \*   \*   \*   \*   \*   \*
>
> Article XVI—Seniority. Seniority shall be lost for any of the following reasons: ... 4. If the employee does not work for the company in a period of twenty-four (24) months unless he or she had a leave other than layoff for such absence.

Rodish admits that in July of 1979 her doctor described her as "markedly disabled ... due to a long detailed history relating to problems with her weight, adrenogenital syndrome, mechanical back pain, terminal proctitis, hirsutism, and hypertension." In August of 1979, her doctor diagnosed her as having "chronic recurrent fibromuscular strain of the neck, back and shoulders, resulting from an accident," and as having "a depressive reaction associated with this." We find no merit with respect to Rodish's claims. It was not illegal for Tension to take Rodish off the seniority list based on the foregoing provisions of the collective bargaining agreement.

**II.** Petitioners contend the hearing officer applied the wrong standard of proof. They claim he used a preponderance of the evidence test instead of the probable cause test he should have used at that part of the proceedings. They rely on the hearing officer's use of the word "establish" when he noted the evidence "does not tend to establish unlawful discrimination" and the evidence does not "establish a channeling or wage policy" violation. We find petition-

ers' inference without merit. The hearing officer's conclusion was that there was no probable cause existing to support the allegations of discrimination; the phrase "preponderance of the evidence" was not included in his decision. We find the correct standard of proof was used by the hearing officer.

**III.** Petitioners allege that the district court erred in affirming the hearing officer's decision when he failed to draft an adequate statement of his reasons for dismissing petitioners' complaints. They assert the hearing officer did not address all of the claims that were brought and that an agency must make detailed findings of fact and conclusions of law. We conclude that the findings as made by the Commission were adequate to permit us to perform judicial review under Iowa Code section 17A.19. Reading the agency decision in conjunction with the record as a whole sufficiently allows us to review this case. We find there was scant evidence to support petitioners' claims of sexual harassment and discrimination with regard to payment for physical exams. With regard to the Commission's finding of lack of jurisdiction with respect to Petitioner Rodish, we conclude this finding was warranted because the 180-day statute of limitations period had run on four of her five causes of action; regarding her fifth cause of action, that she was terminated June 8, 1982, we find the company followed its collective bargaining agreement in terminating her employment after twenty-four months.

We affirm the decision of the district court in dismissing petitioners' claims for lack of probable cause.

AFFIRMED.